**COUNTY PLUMBING & HEATING COMPANY, a Delaware Corporation, Plaintiff,**

v.

**Walter M. STRINE and William B. Strine, individually and trading as Media Real Estate Company, Defendant.**

**PINE WOODS, INC., a Delaware Corporation, Garnishee,**

v.

**DELMARVA POWER & LIGHT CO., a Delaware Corporation, Triangle Electric Contracting Co., Ralph Oil Company, Inc., a Delaware Corporation and Pebbco Industries, Inc., a Pennsylvania Corporation, Defendants on the Counterclaim.**

Superior Court of Delaware, New Castle.

Dec. 17, 1970.

It is to be noted that the penalty for violation of § 396 has been enlarged now to a maximum of 5 years imprisonment.

Charles K. Keil, of Bayard, Brill & Handelman, Richard Beck, of Morris, James, Hitchens & Williams, Wilmington, for County Plumbing & Heating Co.

Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, for Pine Woods, Inc.

James T. McKinstry, of Richards, Layton & Finger, Wilmington, for Delmarva Power & Light Co.

Alfred Isaacs, of Flanzer & Isaacs, Wilmington, for Triangle Electric Contracting Co.

William F. Taylor, of Young, Conaway, Stargatt & Taylor, Wilmington, for Ralph Oil Co.

Richard W. Pell, of Tybout & Redfearn, Wilmington, for Pebbco Industries.

OPINION

CHRISTIE, Judge.

The moving party Pebbco Industries, Inc. a Pennsylvania corporation, here challenges the application of the Delaware "long arm" statute as it applies to substituted service of process upon it.

The pertinent facts are not in dispute.

County Plumbing & Heating Company (County Plumbing), a Delaware corporation, has here filed suit against Pine Woods, Inc. a Delaware corporation, alleging that pursuant to a contract dated February 1, 1968, County Plumbing agreed to do plumbing and heating work in apartment buildings owned by Pine Woods, Inc. in return for payment in the approximate amount of $149,000. The work was completed by about June 15, 1968 and full payment was made except for $8,697.00 which County Plumbing alleges is due to it under the agreement. County Plumbing seeks judgment in this amount.

Pine Woods, Inc. in turn has filed an answer and a counterclaim against the plaintiff together with "counterclaims" bringing in as new defendants in the counterclaims Delmarva Power & Light Company, Ralph Oil Company, Inc., Triangle Electrical Company and Pebbco Industries, Inc. The counterclaims alleged that on or about December 7, 1969, the heating system in the apartment buildings owned by Pine Woods, Inc. failed, causing an explosion which caused extensive damage to the apartments.

The defendants on the counterclaims have filed answers denying the allegations of Pine Woods, Inc. Pebbco Industries, Inc. filed a motion to dismiss the claim against it pursuant to Rule 12(b) on the ground that the Court lacks in personam jurisdiction over it and that the substituted service of process here employed upon it was insufficient. This motion raises the only issue to be resolved in this opinion.

For purposes of the pending motion, the Court will assume that: the heating system in question was installed by County Plumbing and maintained by the Ralph Oil Company, Inc.; that Triangle Electrical Company installed all other electrical equipment in the apartments; that Delmarva Power & Light Company furnished electric power to the apartments and that Pebbco Industries, Inc. manufactured a part of the heating system installed in the apartments.

Affidavits indicate that Pebbco had no offices, warehouses nor other facilities in Delaware. Pebbco had no officers or employees of the company stationed in Delaware, nor did it have its own regular salesmen come into Delaware for the specific purpose of selling Pebbco products. Pebbco maintained no company controlled sales agencies, franchises or subsidiaries in Delaware. It was not registered to do business in Delaware, and did not have a registered agent within the State.

Pebbco was engaged in the manufacturing of heating units which it sold through independent manufacturers' agents or representatives who sold many lines of goods. These manufacturers' agents or representatives were not salaried employees of Pebbco, but independent contractors who received a commission for each of the units they sold.

Most of Pebbco's sales were made through correspondence or orders received directly from the purchaser. In many cases the purchaser took care of the transportation of the heating units to the desired location. Pebbco's employees did not deliver the units but sent them F.O.B. by common carrier.

The units, once they were sold, were installed by employees of independent local contractors such as County Plumbing and not by Pebbco employees. The service and maintenance of the heating units were not done by Pebbco employees but were done by installers or local heating companies.

Pebbco contends that under the circumstances substituted service of process under the following statute was not available against it:

§ 382. *Service of Process on non-qualifying foreign corporations*

(a) Any foreign corporation which shall transact business in this State without having qualified to do business under section 371 of this title shall be deemed to have thereby appointed and constituted the Secretary of State of this State, its agent for the acceptance of legal process in any civil action, suit, or proceeding against it in any State or Federal Court in this State arising or growing out of any business transacted by it within this State. The transaction of business in this State by such corporation shall be a signification of the agreement of such corporation that any such process when so served shall be of the same legal force and validity as if served upon an authorized officer or agent personally within this State.

(b) The provisions of section 373 of this title shall not apply in determining whether any foreign corporation is transacting business in this State within the meaning of this section; and "the transaction of business" or "business transacted in this State," by any such foreign corporation, whenever those words are used in this section, shall mean the course or practice of carrying on any business activities in this State, including, without limiting the generality of the foregoing, the solicitation of business or orders in this State. The provisions of this section shall not apply to any insurance company doing business in this State. (8 Del.C.)

The cross reference in the above statute to section 373 is a reference to the Delaware statute which provides that foreign corporations falling within certain specified categories need not qualify to do business in Delaware by filing a certificate with the Secretary of State. Among the corporations not required to qualify by such procedure are those engaged in sales within the state where the orders are subject to approval outside the state and the goods are shipped from outside the state.

It is obvious from the wording of the above quoted long arm statute and its legislative history that the standards to be applied to the application of that statute are not the same standards as those applied in determining which corporations are required to qualify to do business in the state by registering with the Secretary of State.

It is the contention of Pine Woods, Inc. that Pebbco did in fact "transact business" in this state within the meaning of 8 Del. C. § 382 in that it followed a "course or practice" of "business activities" by "the solicitation of business or orders in this State."

Pine Woods points to the following additional evidence to support its contention: Pebbco's sales manager made casual sales visits to Delaware from time to time perhaps once or twice a year. Pebbco's chief engineer made sales follow-up and customer follow-up visits to Delaware in the hope that customers would continue to buy the products. In addition, manufacturers agents from Baltimore came to the southern part of Delaware from time to time to solicit sales of various products including Pebbco's products but such trips did not include visits to County Plumbing. There was also mail solicitation by which Pebbco sent sales literature and sales brochures to a limited number of prospective customers in Delaware including County Plumbing. In the five years prior to the filing of this suit Pebbco had sold about 50 boilers a year in Delaware.

It is clear that the "minimal contacts" necessary to meet constitutional requirements are here present. The long line of federal cases starting with International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) would tend to indicate that a long arm statute could constitutionally provide for substituted service under the circumstances here present. The question before the Court is whether or not the language of the Delaware statute does make substituted service available here.

I hold that the activities of the manufacturer in soliciting orders, selling products and visiting customers amounted to "a course or practice of carrying on business activities" by "solicitation of business orders in this State" as those terms are used in the Delaware statute. This holding corresponds to a holding of the United States District Court of the District of Delaware where the same statute was found to permit substituted service on a manufacturer under circumstances where the manufacturer's contacts in Delaware were roughly parallel but less substantial than the manufacturer's contacts in this case. Gentry v. Wilmington Trust Company, et al., 321 F. Supp. 1379 (D.C.Del., March 31, 1970). Judge Caleb Wright there indicated that the activities of a manufacturer's representative within the State were sufficient to bringing the manufacturer under the provisions of the long arm statute. Compare Crowell Corp. v. Topkis Construction Co., Del., 267 A.2d 613 (Super.Ct.1970) where substituted service was upheld and the broad scope of the same statute was discussed under a different factual situation.

Pebbco relies on an unreported decision of this Court handed down in 1964, Shaw v. Graham and Joyce Gridland Company (Super.Ct. December 8, 1964), in which a manufacturer was held not to be subject to substituted service of process where the contacts of the manufacturer in Delaware included no personal visits to the State by the manufacturers' personnel. It is apparent that the unreported case was not cited to the Federal District Court. It is contended that, if the unreported case had been cited, the result in the Federal Court would have been different. This is quite possible since the Federal Judge expressed reluctance "to make the first tracks in an area so essentially related to state judicial policy".

The unreported case is distinguishable on its facts from the case at bar. I hold, however, that the extent that the unreported case appears to take a narrow view of

the scope of service available under the long arm statute, such approach has been superceded in the reported Crowell case cited above. I am convinced, as was Judge Caleb Wright in the Gentry case, that the statute itself indicates an intent to adopt a liberal definition of "transacting business" within the State.

Incidentally, I note in passing that this is another case where the service as provided by the long arm statute is equitable to all concerned because it provides the means for the resolution of a multi-party dispute in a single convenient forum. The incident which gave rise to the counterclaim and cross claims took place in Delaware and Delaware law governs. The instruments alleged to have caused the damage are located here and the apartments alleged to have been damaged are here. All the other parties that are alleged to be liable appear to be subject to service only in Delaware and a fragmentation of litigation can be avoided only by trying the case here. It even appears that the boiler in question was made in Pebbco's plant in nearby Lancaster, Pennsylvania and that Pebbco's corporate headquarters was there until a recent merger with a larger corporation.

The motion to dismiss is denied. It is so ordered.