Joan **PERRY**, Plaintiff,

v.

**AMERICAN MOTORS CORPORATION**, a **Maryland Corporation, et al.,** Defendants.

Superior Court of Delaware, New Castle.

Submitted Jan. 30, 1976.

Decided Feb. 24, 1976.

James A. Erisman, Conner, Daley & Erisman, Wilmington, for plaintiff.

John J. Schmittinger and I. Barry Guerke, Schmittinger & Rodriguez, P. A., Dover, for defendant, American Motors Corp.

WALSH, Judge.

In this personal injury action, the plaintiff, Joan Perry, seeks recovery for damages sustained while driving a 1972 Gremlin manufactured by the defendant, American Motors Corporation (AMC). Plaintiff, though a Delaware resident, was temporarily in New Jersey where the accident occurred on August 17, 1972. In addition to AMC, she has named as a defendant the dealer from whom she purchased the vehicle, Newark American, Inc., a Delaware corporation.

AMC is a foreign corporation not qualified to do business in Delaware. Substituted service of process was made upon the Secretary of State of Delaware pursuant to 8 Del.C. § 382,[1] Delaware's "Long

---

1. "§ 382. *Service of process on nonqualifying foreign corporations.* (a) Any foreign corporation which shall transact business in this State without having qualified to do business under § 371 of this title shall be deemed to have thereby appointed and constituted the Secretary of State of this State, its agent for the acceptance of legal process in any civil action, suit or proceeding against it in any state or federal court in this State arising or growing out of any business transacted by it within this State. The transaction of business in this State by such corporation shall be a signification of the agreement of such corporation that any such process when so served shall be of the same legal force and validity as if served upon an authorized officer or agent personally within this State. (b) The provisions of § 373 of this title shall not apply in determining whether any foreign corporation is transacting business in this State within the meaning of this section; and 'the transaction of business' or 'business transacted in this State,' by any such foreign corporation, whenever those words are used in this section, shall mean the course or practice of carrying on any business activities in this State, including, without limiting the generality of the foregoing, the solicitation of business or orders in this State. The provisions of this section shall not apply to any insurance company doing business in this State."

Arm Statute". AMC has moved to quash that service on the ground it is not a corporation "transacting business" in Delaware under the standards of § 382(a) and (b). The crucial language of § 382, added by amendment in 1961, is the definition of transaction of business as "the course or practice of carrying on any business activities in this State including, without limiting the generality of the foregoing, the solicitation of business or orders in this State". The issue here is whether the particular connection or contacts between AMC and the State of Delaware rise to the statutory level.[2]

AMC, a Maryland corporation with its principal place of business in Detroit, Michigan, has no offices, factories, assembly plants, storage facilities or terminals in Delaware. It has no salesmen or agents located in the state, and there is no history of regular visitation by salesmen or agents.

The plaintiff's automobile, as well as all other AMC automobiles, came into Delaware via American Motors Sales Corporation (AMSC), a wholly owned subsidiary of AMC. AMSC buys all AMC automobiles from its parent at locations remote from Delaware and, in turn, resells them to dealers (such as Newark American) franchised by AMSC, not AMC. This appears to be the sole function and activity of AMSC.

AMC advertises extensively on television and radio broadcasts in Delaware. Magazines and newspapers with substantial Delaware circulation are also carriers of AMC advertising. In addition, AMC direct mails brochures to previous purchasers of AMC automobiles in Delaware. AMC offers directly to retailers, promotional information and display paraphernalia, as well as newspaper and radio copy. To the purchaser of an AMC automobile, AMC provides a "Buyer Protection Plan" which is a heavily advertised and an allegedly extensive warranty on all AMC vehicles. This warranty is extended through the retailer but the consumer is provided a toll free number to AMC offices, and all literature, in particular the warranty and car window sticker, identify AMC, not AMSC.

Plaintiff first argues that AMC and its subsidiary AMSC are in effect the same corporation and since AMSC clearly has contacts in Delaware (it is a Delaware corporation) then AMC, the parent is *ipso facto* amenable to service in Delaware.

Although the question of *alter ego* corporate existence for jurisdictional purposes was obliquely dealt with in *Mazzotti v. W. J. Rainey, Inc.,* 31 Del.Ch. 447, 77 A.2d 67 (1950), no Delaware case has dealt squarely with the problem of the wholly owned subsidiary insulating the parent from service of process through discharge of certain of its commercial activities. Two cases involving suits by plaintiffs injured in Renault automobiles yielded differing results. In the earlier case, *Regie Nationale Des Usines Renault, Billancourt, (Seine) France v. Superior Court,* 208 Cal.App.2d 702, 25 Cal.Rptr. 530 (1962), a French manufacturer sold automobiles to its wholly owned U. S. subsidiary which, in turn, sold the vehicles to the dealer in California from whom an injured plaintiff had purchased the car. In rejecting a motion by the parent to quash service the Court noted that the parent cannot so design its marketing efforts to arrange for "independent" agents to avoid the jurisdictional effect of its deliberate contacts with the purchasing public.

---

2. The leading U. S. Supreme Court cases of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *Hanson v. Denckla,* 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958) are not directly relevant to the resolution of this matter. Those cases deal with the question of minimum contacts between the foreign corporation and the state in a due process context. The Delaware statute appears to satisfy the constitutional test. See: Cummins, *In Personam Jurisdiction Over Nonresident Manufacturers in Product Liability Action,* 63 Michigan Law Review 1028 (1965).

In *Velandra v. Regie Nationale Des Usines Renault,* Ct. of App., 6th Cir., 336 F.2d 292 (1964), a Federal Court, on very similar facts, rejected the theory that the mere ownership of a wholly owned subsidiary is alone sufficient to justify jurisdiction over the parent. Relying on *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), the court refused to accept any theory of fictitious corporate separation, *alter ego* or agency. However, the court noted that the "ownership of the subsidiary carrying on local activities in Michigan [the forum state] represents merely one contact or factor to be considered in assessing the existence or non-existence of the requisite minimum contacts with the State of Michigan". 336 F.2d 297.

In *Crucible, Inc. v. Stora Kopparbergs Bergslags AB,* D.C.W.D. of Pa., 403 F. Supp. 9 (1975), the defendant was a Swedish steel manufacturer whose products were sold in the United States through a wholly-owned subsidiary, which resold the products exclusively to local purchasers. Initially, the District Court rejected *Cannon Mfg. Co. v. Cudahy Packing Co., supra,* as an impediment to finding Stora-Sweden amenable to process in Pennsylvania. Admittedly, the Court in *Crucible* was interpreting Pennsylvania's long arm statute but its policy announcement is illuminating. In rejecting the parent's claim of third party status the Court held that a foreign corporation should not be permitted to market its products and retain immunity from suit in local courts "simply by structuring its business operation in such a way as to avoid direct activity . . ." 403 F.Supp. 12.

While a strong policy argument may be fashioned in this case to permit service upon a wholly owned subsidiary (AMSC) as constituting service upon the parent (AMC) it is unnecessary to posit jurisdiction upon that sole consideration. An examination of AMC's admitted contacts leads to the same result. If the focus be upon AMC as a nonqualified foreign corporation it is necessary to apply the two-pronged test of amenability to process under § 382. That test as outlined in *Simpson v. Thiele, Inc.,* D.Del., 344 F.Supp. 7, 8 (1972) is: "(1) the corporation must be transacting business generally in Delaware, and (2) the suit must arise or grow out of a particular business transaction which occurred in the State."

■ The second prong of the test is clearly satisfied in the instant case. This suit is based upon the failure of the brakes of an automobile bought and allegedly serviced in Delaware. The occurrence of the accident in New Jersey is purely fortuitous and does not detract from the conclusion that this action had its genesis in a business transaction consummated in Delaware.

■ As to analyzing the first prong, the general transaction of business test, decisions interpreting Delaware's Long Arm Statute have held consistently that the language of § 382 should be liberally construed in favor of finding jurisdiction. *County Plumbing and Heating Company v. Strine,* Del.Super., 272 A.2d 340 (1970); *Gentry v. Wilmington Trust Company,* D. Del., 321 F.Supp., 1379 (1970); *Crowell Corporation v. Topkis Construction Co.,* Del.Super., 267 A.2d 613 (1970); *Delaware Lead Construction Company v. Young Industries, Inc.,* D.Del., 360 F.Supp. 1244 (1973). (See also the *Annotation* in 19 A.L.R.3d, 13 for a discussion of the liberal trend in long arm statutes in other states.) These cases measure the concept of "transacting business" by weighing the quantity and quality of contacts between the foreign corporation and the state.

■ While declining to find AMC directly amenable to service through its rela-

tionship to AMSC, I find the activities of AMSC to be a significant major contact, *inter· alia,* between the parent and the state. By specific design, AMC automobiles are sold and eventually transferred into Delaware through a regular and invariable chain of sales involving AMSC and, ultimately, retail purchasers in this State, including the plaintiff.

Viewed from another perspective, AMC can be seen to be engaged in a massive and conscious program of solicitation of business and orders in the State of Delaware. The Delaware cases of *County Plumbing and Heating, supra,* and *Gentry, supra,* though laced with factual variations, emphasize that systematic solicitation of orders even where the physical presence of the foreign corporation is minimal, is sufficient to subject the corporation to Delaware jurisdiction.

The recent case of *Scott Paper Company v. Scott's Liquid Gold, Inc.,* D.Del., 374 F. Supp. 184 (1974) provides persuasive support for the contention that AMC's conduct herein amounts to transacting business in Delaware. In that case *in personam* jurisdiction was sought over a Colorado corporation with its principal place of business in Denver. As in the instant case, the defendant did not sell its products in Delaware directly. Instead, Scott's Liquid Gold sells its product to independent distributors which, in turn, sell to retailers. However, as with AMC, Scott's Liquid Gold advertises heavily in television, radio and magazines with large Delaware circulation. While refusing to decide the significance of the advertising alone, Judge Stapleton determined such advertising to be "but one part of an integrated marketing program which has other significant contacts with this state." The Court proceed-

ed to uphold service of process even though the direct sale activity was carried out by commission brokers rather than the defendant's own employees.

The "commercial actuality" and "chain of sales" approaches have been used to sustain jurisdiction under long arm statutes in California (*Buckeye Boiler Company v. Superior Court of Los Angeles County,* 71 Cal.2d 893, 80 Cal.Rptr. 113, 458 P.2d 57 (1969)) and in Maryland (*Lamprecht v. Piper Aircraft Corporation,* 262 Md. 126, 277 A.2d 272 (1971)) over the objection of foreign corporations which insulated themselves against direct sales or business contacts with retail purchasers.

The third major contact with the State of Delaware involves the relationship between AMC and the purchaser of an AMC automobile created by the Buyer Protection Plan. The plan is a warranty on the automobile issued by AMC concurrently with the purchase. The warranty is designed by, backed by and transmitted directly from AMC to the consumer. Even assuming that the automobile itself came into Delaware through an independent middleman, the Buyer Protection Plan is held out by AMC, though its massive advertising, as a direct benefit flowing to the consumer from an automobile manufacturer of national stature. AMC is thus a primary party to this warranty which was contracted for in Delaware since the dealer has obvious authority to transmit the warranty at the time of delivery of the automobile.

Understanding the relationship of AMC to the State of Delaware from the perspective of the totality of the contacts, in particular: (1) the existence and function of AMSC in Delaware; (2) the substantial solicitation of sales through advertising in Delaware and (3) the direct link provided by the Buyer Protection Plan between AMC and Delaware,[3] I conclude that AMC

3. Cummins, *In Personam Jurisdiction Over Nonresident Manufacturers in Product Liability Action,* 63 Michigan Law Review 1028 (1965) and *Gray v. American Radiator*

*& Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961) discuss the theory that the distribution of potentially dangerous products should require the manufacturer to

intentionally and regularly transacts business in Delaware. This conclusion is consistent with the language of § 382(a) and (b) as well as the liberal interpretation of that statute given by both State and Federal courts in Delaware. Since AMC is amenable to substituted service of process as effected by the plaintiff its motion to quash service of process is denied.

IT IS SO ORDERED.

defend suits arising out of an injury without further contacts with the jurisdiction. This is, perhaps, a fourth reason that could be advanced for jurisdiction over an automobile manufacturer. The recent enlargement of the doctrine of strict liability of automobile sellers and lessors is manifest. *Dillon v. General Motors Corporation,* Del.Super. 315 A.2d 732 (1974); *Martin v. Ryder Truck Rental, Inc.,* Del.Supr., 353 A.2d 581 (Decided February 19, 1976).