Wallace S. CROPPER, Jr., and Diane C. Cropper, his wife, Plaintiffs,

v.

REGO DISTRIBUTION CENTER, INC., et al., Defendants.

Civ. A. Nos. 77–117, 77–194.

United States District Court, D. Delaware.

Nov. 21, 1978.

I. Barry Guerke, Schmittinger & Rodriguez, P. A., Dover, Del., for plaintiffs.

James W. Semple, Flanzer & Issacs, Wilmington, Del., for defendant Self-Cleaning Strainer Co.

Samuel R. Russell, Biggs & Battaglia, Wilmington, Del., A. Dean Betts, Georgetown, Del., for defendant Coastal Supply Co., Inc.

F. Alton Tybout and Jeffrey S. Marlin, Tybout & Redfearn, Wilmington, Del., for third party defendant Southern States Cooperative.

Carl Schnee, Schnee & Castle, Wilmington, Del., attorney for defendant Rego Distribution Center, Inc.

James T. McKinstry, Richards, Layton & Finger, Wilmington, Del., for defendant Swift Agricultural Chemical Corp. and Swift and Co.

Robert K. Payson and Christopher J. Warner, Potter, Anderson & Corroon, Wilmington, Del., for third party plaintiff Penn Central Transp. Co.

Dennis D. Ferri, Becker & Ferri, Wilmington, Del., for defendant Pro Chem Co., Inc.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

In this diversity action, the plaintiffs, Wallace S. Cropper, Jr. and Diane C. Cropper, his wife, seek damages for severe burns sustained by Wallace Cropper while operating a valve-tree assembly, or riser system,

to unload anhydrous ammonia from a railroad tank car to a holding tank on the premises of his employer, Southern States Cooperative, in Dagsboro, Delaware. The plaintiffs, Maryland domiciliaries, brought suit against a variety of defendants: The Rego Distribution Center, Inc., a New Jersey corporation engaged in the sale and distribution of valves; The Bastian-Blessing Corporation, a New York firm allegedly engaged in the manufacture of valves; the Coastal Supply Company,[1] a Delaware corporation and former owner of the land upon which all or most of the riser system was situated; the Penn Central Company, lessor of the right of way where plaintiff's mishap allegedly occurred; the Swift Agricultural Chemicals Company, a Delaware corporation and alleged former owner of the riser system; and the Royster Company, a Virginia corporation, alleged to have had some part in the manufacture of the riser system; and finally, the Self-Cleaning Strainer Company (hereinafter "SCS"), a manufacturer of strainers based in Illinois.[2] Defendant Self-Cleaning Strainer ("SCS") has moved for dismissal of the plaintiffs' claim against it for lack of personal jurisdiction while defendant Coastal Supply Company has moved for summary judgment.

## I. SCS'S CHALLENGE TO PERSONAL JURISDICTION

SCS, a corporation of the State of Illinois, not qualified to do business in Delaware, may be amenable to service of process here, if at all, only in accordance with the terms of 8 *Del.C.* § 382, which provides:

"(a) Any foreign corporation which shall transact business in this State without having qualified to do business under § 371 of this title shall be deemed to have thereby appointed and constituted the Secretary of State of this State, its agent for the acceptance of legal process in any civil action, suit or proceeding against it in any state arising or growing out of any business transacted by it within this State. . . .

"(b) . . . 'the transaction of business' or 'business transacted in this State,' by any such foreign corporation, whenever those words are used in this section, shall mean the course or practice of carrying on any business activities in this State, including, without limiting the generality of the foregoing, the solicitation of business or orders in this State.

"(c) In the event of service upon the Secretary of State, it shall be the duty of the Secretary of State forthwith to notify the corporation thereof by registered or certified mail, return receipt requested, directed to the corporation at the address furnished to the Secretary of State by the plaintiff in such action, suit, or proceeding, accompanied by a copy of the process or other papers served upon him. It shall be the duty of the plaintiff in any action, suit or proceeding to serve process or other papers in duplicate and to pay to the Secretary of State the sum of $5 for the use of the State, which sum shall be taxed as part of the costs in the action, suit or proceeding, if the plaintiff shall prevail therein. The Secretary of State shall enter alphabetically in the process book, kept for that purpose, the name of the plaintiff and defendant, the title and docket number of the case in which process has been served upon him, the return date thereof, and the day and hour when the service was made. (8 *Del.C.* 1953, § 382; 56 Del.Laws, c. 50.)"

■ Preliminarily, this Court can dispose of what the plaintiffs have aptly termed a hypertechnical challenge to service of proc-

---

1. Summary judgment has already been granted from the bench in favor of defendant Coastal Construction Co., Inc., upon plaintiffs' admission in their brief that "nothing in the present record [links] in any way the Defendant Coastal Construction Co., Inc. to this lawsuit." Doc. 117, at 3.

2. Originally, plaintiffs sued a nonexistent corporation, Paget Strainer Valve, Inc., relying on SCS's use of the brand name "Paget" in its solicitation and advertising efforts. In a second complaint, the plaintiffs named Self-Cleaning Strainer. This error in nomenclature, corrected upon consolidation of the two cases, gave rise to certain irregularities in the service of process upon SCS, discussed *infra*.

ess proffered by the defendant and predicated upon subsection (c) of § 382 above. It argues, first, that the Secretary of State's notice letter mistakenly addressed to Paget-Strainer Valve, Inc., a nonexistent corporation, was ineffective service, although it was received in good order by SCS; and second, that the service of the second complaint upon the properly named defendant failed for lack of an accompanying notice letter. There is no dispute as to SCS's actual notice: it conceded as much at oral argument. Nor has it made any effort to demonstrate any prejudice from a purely clerical failure on the part of the Secretary of State. Finally, the defendant has adduced no Delaware authority to support its view that the Delaware Legislature contemplated the dismissal of suits upon the slightest irregularity in service. The plaintiffs, on the other hand, have brought to our attention convincing authority to the contrary in a related context. In *Lightburn v. Delaware Power & Light Co.*, 2 Storey 415, 52 Del. 415, 158 A.2d 919 (1960), the Delaware Supreme Court emphasized that militant adherence to the substituted-service requisites of the nonresident motor vehicle act only became significant when actual notice, with its corresponding due-process problem, was in dispute. *Id.* at 922–23. This Court concludes, therefore, that no error in the mechanics of the service upon SCS requires dismissal.

■ The substantive requirements of the Delaware long-arm statute, found in subsections (a) and (b) of § 382, engender more difficulty for the plaintiffs, who bear the burden of proof in this challenge to in personam jurisdiction. *See e. g., Fehl v. S.W.C. Corp.*, 433 F.Supp. 939 (D.Del.1977); *Simpson v. Thiele, Inc.*, 344 F.Supp. 7 (D.Del.1972). Although the Delaware Supreme Court has not yet had occasion to construe § 382, the lower State courts and the federal court are in agreement that the statute does not confer jurisdiction to the extent permissible under the due process clause. Judge Steel of this district interpreted § 382 as establishing two criteria for service: "(1) the corporation must be transacting business generally in Delaware, and (2) the suit must arise or grow out of a particular business transaction which occurred in the state." *General Foods Corporation v. Haines and Company, Inc.*, 458 F.Supp. 1167 (D.Del.1978); *Simpson v. Thiele, Inc.*, 344 F.Supp. 7, 8 (D.Del.1972); *accord, County Plumbing & Heating Company v. Strine*, 272 A.2d 340, 343 (Del.Super. 1970); *Crowell Corporation v. Topkis Construction Co.*, 267 A.2d 613, 614–15 (Del.Super.1970). Although the "transacting business generally" requirement of § 382 has been construed liberally in both state and federal court, *see e. g., Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 374 F.Supp. 184, 187 (D.Del.1974); *Nacci v. Volkswagen of America, Inc.*, 297 A.2d 638, 641 (Del.Super. 1972); *County Plumbing & Heating Co. v. Strine, supra*, 272 A.2d at 344, and may be assumed for present purposes to reflect the "minimum contacts" test of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), it is unnecessary for us to decide whether SCS's scant activity in Delaware (a total of ten sales) amounts to the general transaction of business in Delaware, for it is clear that the plaintiffs have failed to demonstrate that their claim arose out of any transaction consummated by the defendant in Delaware.

■ Because the requirement that the claim arise or grow out of business transacted within the state represents an effort by the Delaware Legislature to inhibit the reach of the minimum contacts test sufficient to satisfy due process, it has been construed narrowly. *See Fehl v. S.W.C. Corp., supra; Eastman Kodak Co. v. Studiengesellschaft Kohle*, 392 F.Supp. 1152 (D.Del.1975); *La Chemise Lacoste v. General Mills, Inc.*, 53 F.R.D. 596 (D.Del.1971), *aff'd*, 487 F.2d 312 (3d Cir. 1973). In *La Chemise Lacoste*, the Court found personal jurisdiction wanting when the foreign corporation's only in-state transactions involved product lines not at issue in the lawsuit. *La Chemise Lacoste, Inc. v. General Mills, Inc., supra* at 603. To like effect is *Capshaw v. Smith Estates. Inc.*, 69 F.R.D. 598, 602 (1976), in which the second require-

ment of § 382 was held to require that some "key event" in the history of the transaction creating the claim take place in Delaware. In *Simpson v. Thiele, supra,* the defendant's motion to quash service was granted because, although the plaintiff was injured by machinery in Delaware, it had been manufactured, sold and delivered in Pennsylvania to the plaintiff's employer. *Cf. Fehl v. S.W.C. Corporation, supra* at 943 n. 5.

▮ Taken together, these authorities view the second limiting facet of § 382 as requiring that the defendant perform some act in Delaware with respect to the claim by which it has purposefully availed itself of the privileges and protections of this state. Neither party has made any effort to trace the series of transactions that resulted in the presence of the allegedly defective strainer in Dagsboro, Delaware. Interrogatories served upon SCS prior to the hearing on the motion to dismiss, however, revealed that SCS has made only ten sales either directly to a Delaware purchaser or indirectly to an out-of-state purchaser for shipment to or delivery in Delaware. None of these sales involved the Dagsboro strainer. The best that can be gleaned from the record is that this particular strainer may have been installed at the plant by one of two other defendants in this case; no evidence before the Court demonstrates that SCS intended its equipment for the Dagsboro plant, or even that it knew that the strainer would ultimately wind up there. In sum, although SCS has conducted ten transactions in Delaware, there is nothing in the record to create the inference that this cause of action arose out of any of them.

Apparently unwilling to dispute the latter point, plaintiffs press an alternative, much less literal, interpretation of § 382. That interpretation would find the "arising out of" requisite satisfied whenever a foreign corporation manufacturing for general sale has the reasonable expectation that its wares will find their way to Delaware. In support of what they term a "stream of commerce" theory, they rely almost exclu-

sively upon a recent Delaware case, *Perry v. American Motors Corp.,* 353 A.2d 589 (Del. Super.1976), in which a foreign automobile manufacturer was held amenable to suit under § 382 despite the rather conspicuous absence of the usual local indicia of a large corporate presence: sales agents, offices, factories, etc. Rather the Court found that AMC's systematic, indeed unvarying, use of a wholly owned subsidiary to market its cars in Delaware, in conjunction with its extensive advertising and promotional efforts in Delaware satisfied the transaction of business requisite. As for the requirement that the claim arise out of the defendant's business activities, the *Perry* court appeared satisfied merely by the presence of a defective part in a Delaware automobile. Although the court's summary treatment of the second facet of the test makes analysis difficult, *Perry* appears at first glance to bolster plaintiffs' argument. But I find myself unable to evaluate what weight Judge Walsh, in his brief discussion of the second prong, may have attached to such factors as AMC's direct-mail activities to AMC purchasers (including, presumably, the plaintiff) in Delaware, its Buyer Protection Plan offered directly to purchasers (also presumably including the plaintiff) and AMC's complete ownership of the Delaware marketing entity. SCS, a corporation engaging in far less pervasive activity, has not erected any business barriers of which the Court is aware between itself and its few Delaware customers, nor did it communicate in any fashion known to this Court to any potential or prior purchasers, other than through the medium of a nationally distributed trade journal.

While the shield of the wholly owned marketing corporation and the size and pervasiveness of the defendant may have enhanced the respectability of the "stream-of-commerce" theory in *Perry,* the limits to the theory are well nigh impossible to discern. If plaintiffs' stream-of-commerce concept built upon *Perry* were applied to hold foreign corporations amenable to suit wherever they have reason to expect their goods to come to rest, the second prong of § 382 would evolve into a variation, and

potentially a much more relaxed variation, of the first prong's minimum-contacts test. Similarly unhelpful, is plaintiffs' reliance upon such cases as *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), and *Vencedor Manufacturing Company, Inc. v. Gougler Industries, Inc.*, 557 F.2d 886 (1st Cir. 1977), since both involve local long-arm statutes unquestionably authorizing jurisdiction to the limit of the due process clause.

In summary, the Court declines to endorse a construction of § 382 that would render any foreign corporation manufacturing for general sale amenable to suit in Delaware upon the chance occurrence that one of its products finds its way across the Delaware border. To do so would vitiate the limitation that the Delaware General Assembly has placed on the permissiveness of the standard set out in *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Absent some express guidance from the Delaware Supreme Court, this Court sitting in diversity declines to take that step. SCS's motion to dismiss will be granted.

## II. COASTAL SUPPLY COMPANY'S MOTION FOR SUMMARY JUDGMENT

The defendant Coastal Supply Company, Inc. has moved this Court for summary judgment in its favor on plaintiffs' claim of negligence. Coastal Supply Company, Inc. owned the land upon which the allegedly defective riser system was installed prior to the purchase of both the land and the riser system by plaintiff's employer, Southern States Cooperative. The equipment, which was never owned by Coastal Supply Co., was sold to Southern States by the Swift Agricultural Chemicals Co., also a defendant in this action.[3] During the period prior to the sale, Coastal Supply Co. used the equipment as warehouseman and sales agent for Swift.[4]

Plaintiffs assert that Coastal Supply Co. breached its duty as vendor of the land when it failed to inform Southern States of the defect in the equipment. Plaintiffs' theory of liability is grounded upon § 353 of the Restatement of Torts:

"§ 353. Undisclosed Dangerous Conditions Known to Vendor

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise, the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take precautions."

According to the uncontroverted facts, Coastal Supply Co. did not know of any defect in the riser system. Assuming for the moment that Coastal Supply Co. is properly chargeable with a duty to warn with respect to this equipment, the only factual question left, then, under the Restatement is whether Coastal Supply Co. should have known of the defect. While it is axiomatic that summary judgment must be denied if there is any material factual dispute between the parties, *Johnson v. Alldredge*, 488 F.2d 820, 823 (3d Cir. 1973), the

---

3. Chandler Affidavit, Doc. 116, ¶ 5.6.

4. Answers of Swift Agricultural Chemicals Corp. to Plaintiffs' First Set of Interrogatories, Doc. 16, ¶ 37(c).

only evidence plaintiffs have adduced on the issue of whether defendant should have known of the defect is that the defendant used the equipment for a substantial period of time prior to the sale. It is not at all clear, were this the sum of the plaintiffs' case to be presented to the jury, that plaintiffs could survive a directed verdict in favor of the defendant. *See Larry V. Muko, Inc. v. Southwestern Pennsylvania Building and Construction Trades Council,* 3d Cir. August 11, 1978, slip op. at 17.

The question whether use alone provides an inference of constructive knowledge of a design defect in machinery need not be faced, however, because a more serious flaw inheres in plaintiffs' theory of liability against this defendant. While the plaintiffs rely on § 353 to fix a vendor's duty upon this defendant, the record demonstrates that defendant Coastal Supply Co. did not act as vendor of the riser system to Southern States Cooperative but rather merely used the system in its capacity as warehouseman for Swift Agricultural Chemical Co.[5] Plaintiffs gave scant attention to this wrinkle in the application of the Restatement of Torts § 353, but they apparently believe that the language "any condition, whether natural or artificial" encompasses personalty owned by a third party. Although the Comments to the Restatement do not aid in determining the scope of the words "any condition, whether natural or artificial," the Court cannot accept plaintiffs' interpretation. It is clear that § 353 of the Restatement imposes a duty upon the vendor of land on which there may exist some dangerous condition, because it is assumed that the landowner is the only, or at least the primary, party with responsibility and knowledge respecting the defective condition. On the set of facts presently before the Court, however, the underlying assumption of the Restatement does not apply. The defendant-landowner was not the primary party upon whom responsibility for the "condition," if that term is apt,

would lie. The "condition" is an item of personalty owned by another entity, against whom the vendor's duty to warn would run, if it runs at all, in the circumstances of this case.[6]

It is held that the duty of a vendor of land under § 353 extends only to those natural and artificial "conditions" that the vendor owns, either because they are annexed to the land or because the condition is part and parcel of the land itself. The vendor's duty to warn under § 353 was never intended to extend to personalty owned by some other entity. The plaintiffs having directed the Court to no authority imposing a duty to warn of defects upon mere users of personalty, the motion for summary judgment of defendant Coastal Supply Company, Inc. will be granted in its favor.

---

5. Chandler Affidavit, Doc. 116, ¶ 5.

6. The Court expresses no opinion on any possible liability of the vendor of the personalty

itself under § 353, or even whether that section of the Restatement is a valid avenue of relief against an appropriate defendant.