**Robert P. O'NEAL, Plaintiff,**

v.

**HUXLEY DEVELOPMENT CORPORATION, Defendant and Third-Party Plaintiff,**

v.

**OY PARTEK, AB, t/a Paraisten Kalkki Oy, et al., Third-Party Defendants.**

Civ. A. No. 82–79.

United States District Court,
D. Delaware.

Feb. 22, 1983.

Robert Jacobs and Thomas C. Crumplar, Jacobs, Crumplar & Donovan, Wilmington, Del., for plaintiff.

Walter L. Pepperman, II, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for Huxley Development Corp.

Richard P.S. Hannum, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for Gale Corp. and Keene Corp.

Warren Burt, Wilmington, Del., for Oy Partek.

B. Wilson Redfearn, Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for Special Materials, Inc., York Industries, and Special Electric Co.

Philip B. Beardsley, H. Murray Sawyer, Jr., P.A., James Semple, Flanzer & Isaacs, Wilmington, Del., for Pacor, Inc. and Herty Foundation (Mr. Semple for Herty Foundation only).

Mary Pat Trostle, Biggs & Battaglia, Wilmington, Del., for Hercules, Inc. and Haveg Industries, Inc.

James F. Kipp, Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, Del., for Asbestos Corp. of America, Inc.

George B. Heckler, Jr., Heckler & Cattie, Wilmington, Del., for Continental Products and Associated Mineral Corp., A.G.

Douglas B. Catts, Schmittinger & Rodriguez, P.A., Dover, Del., for Celotex Corp.

John C. Phillips, Jr., Wilmington, Del., for Powhatan Min. Corp. and Mead Paper Specialty.

J.R. Julian, Wilmington, Del., for GAF Corp.

Michael N. Castle, Michael N. Castle, P.A., Wilmington, Del., for Johns-Manville.

James T. McKinstry, Richards, Layton & Finger, Wilmington, Del., for Owens-Corning Fiberglas Corp.

Stuart B. Young, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for Hollingsworth and Vose Paper Co.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Third-party defendant Special Electric Co., Inc. ("Special Electric") has filed a motion to dismiss the third-party complaint of defendant, Huxley Development Corporation ("Huxley")[1] on the grounds of lack of personal jurisdiction and insufficiency of service of process.[2] The motion to dismiss for lack of personal jurisdiction will be granted in that the Delaware Long Arm Statute, 10 *Del.C.* § 3104(c), provides no basis for the assertion of personal jurisdiction.[3]

The record reveals the following facts. Richard Wareham is a majority shareholder and chief executive officer of three companies: Special Electric; Special Materials (Wisconsin), Inc. ("Special Materials"); and Special Materials (Delaware), Inc. (hereinafter collectively referred to as the "Special companies"). The three Special companies operated out of the same corporate headquarters in Madison, Wisconsin, used the same logo (but not the same name) and shared an "800" telephone number. Only Special Electric is involved in the instant motion.[4] Special Electric's business was primarily the sale of electrical insulation materials while the other two companies

---

1. Plaintiff has submitted the brief in opposition to Special Electric's motion. Normally, a third-party plaintiff would oppose such a motion, however, in this case, defendant Huxley has adopted the brief of the plaintiff and agreed to allow plaintiff to argue the motion.

2. Since Special Electric has not addressed its motion to dismiss for insufficiency of service of process, the Court finds that Special Electric has waived this defense. Additionally, the Court will not address Special Electric's "de minimus" theory regarding personal jurisdiction since that theory was belatedly raised in its reply brief.

3. Plaintiff, an employee of Haveg Corporation ("Haveg") allegedly contracted varied medical disorders as a result of his exposure to asbestos at the workplace. Haveg is a third-party defendant with cross-claims against Special Electric, who is another third-party defendant and an alleged supplier of asbestos to Haveg.

4. Special Materials, Inc., a Wisconsin corporation, is another third-party defendant in this suit.

are apparently engaged in the business of selling asbestos fibers and asbestos paper. It is undisputed that Special Electric is not qualified to do business in Delaware, has no license, franchise or personnel in Delaware, neither owns nor leases property in Delaware, and has no office, telephone, bank or brokerage account in Delaware.[5]

The only direct link between Special Electric and the subject matter of this litigation involves incidents in 1972 and 1977. In 1972, Haveg sent Purchase Order No. 55965 to Special Electric for 8,000 pounds of high bulk asbestos paper. (Doc. 216, Ex. A). The order states that the order was confirmed on July 10, 1972, the same day it was written. Records of Haveg indicate that it received 508 pounds of asbestos paper in 1972 in satisfaction of Purchase Order No. 55965. (Doc. 216, Ex. A). There is no direct evidence that Special Electric actually filled the order. In an affidavit, Richard Wareham, treasurer and chief executive officer of Special Electric, stated that Special Electric "entered into no contracts in Delaware" and has "made no sales to any companies in Delaware." (Doc. 149, Ex. A).

With respect to the sale in 1977, Haveg Purchase Order No. 73193 states that Haveg ordered 5,000 pounds of high bulk asbestos paper from Special Electric. (Doc. 216, Ex. B). The order states that it was confirmed on November 11, 1977, the same day it was written. Haveg records also indicate receipt of 156 pounds of asbestos paper in satisfaction of Purchase Order No. 73193. (Doc. 216, Ex. B). Haveg documents do not indicate that Special Electric filled the purchase order. An invoice of Special Materials indicates that Special Materials and not Special Electric filled Haveg's Purchase Order No. 73193. (Doc. 216, Ex. B—Invoice No. 503). The invoice states that Special Materials sent the paper and billed Haveg. Again, Special Electric denies having filled the 1977 order.[6]

■ Whether this Court has personal jurisdiction over Special Electric depends on whether the Delaware Long Arm Statute, 10 *Del.C.* § 3104(c), reaches the complained of conduct. Third-party plaintiff, Huxley, has the burden of establishing by a preponderance of the evidence that personal jurisdiction over Special Electric is proper. *See Forsythe v. Overmyer,* 576 F.2d 779, 781 (9th Cir.), *cert. denied,* 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978); *Simpson v. Thiele, Inc.,* 344 F.Supp. 7, 8 (D.Del.1972).

Huxley urges two bases in support of personal jurisdiction over Special Electric. One is premised upon the two alleged sales of asbestos products to Haveg, one in 1972 and the other in 1977. The other is premised upon the fact that the three Special companies conducted business as a triumvirate rather than clearly defined corporate entities and therefore should be liable for the acts of each other. Huxley argues that the sales in 1972 and 1977 satisfy subsections (1), (2), (3) and (4) of 10 *Del.C.* 3104(c).[7]

■ Huxley claims that subsections (c)(1) and (c)(2) support jurisdiction in that Special Electric transacted business in Delaware and contracted to ship asbestos paper into Delaware in 1972 and again in 1977. Huxley's allegations would be correct if the evidence established that Special Electric, upon receipt of Haveg's purchase orders, simply filled these orders, shipped the asbestos into Delaware and then billed Haveg.

---

5. Wareham affidavit. (Doc. 149, Ex. A.).

6. *See* Wareham affidavit. (Doc. 149, Ex. A).

7. Section 3104(c) states in pertinent part:
   (c) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:
   (1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

However, the record only establishes that Haveg sent two purchase orders to Special Electric. Both orders indicate that Haveg confirmed the orders on the same day that the purchase orders were written. However, the record does not indicate which Special company, if any, filled the orders.[8] Wareham, an officer of Special Electric, denies that Special Electric ever transacted business in Delaware or contracted to supply goods in Delaware. Special Electric claims that if Special Electric was involved at all, upon receipt of Haveg's purchase orders it simply referred the order to an affiliate corporation, Special Materials, a corporation that sold high bulk asbestos paper. In support of its position, Special Electric offers an invoice of Special Materials indicating that Special Materials filled the Haveg order. Although there is no similar invoice for the 1972 sale, Special Electric argues that what occurred in 1977 also occurred in 1972.

The Court finds that the evidence does not support Huxley's claim that Special Electric actually filled Haveg's 1972 or 1977 purchase orders. At best, the evidence indicates that Special Electric simply referred the purchase orders to Special Materials rather than fill the orders itself. At best, with respect to the two orders, the record indicates that Haveg erroneously designated Special Electric to fill the purchase orders for asbestos paper. Haveg did not differentiate between the companies and the Special companies did not make clear to Haveg which company would be filling the orders.

The question remains, however, whether Special Electric's referral of Haveg's purchase order to Special Materials subjects Special Electric to jurisdiction under section 3104(c). The issue is whether a referral of a purchase order to an affiliate corporation constitutes a transaction in Delaware under section 3104(c)(1) or contracting to supply goods in Delaware under section 3104(c)(2).

In *Wilmington Supply Co. v. Worth Plumbing & Heating, Inc.*, 505 F.Supp. 777, 779–80 (D.Del.1980), the court stated that Delaware follows the courts of Illinois in interpreting the Delaware Long Arm Statute, 10 *Del.C.* § 3104(c), which is based upon the Illinois Long Arm Statute, Ill.Stat. Ann. c. 110 § 17(1):

> Under the Illinois statute, personal jurisdiction over a nonresident defendant does not depend upon the physical presence of the defendant within the state; where a plaintiff's claims arise from acts or transactions committed by the nonresident defendant, personal jurisdiction over the defendant may be obtained if the acts or transactions have a substantial connection with the former state. [citations omitted] The Illinois courts have liberally construed this "substantial connection" requirement and have held on at least two instances that a single phone call into the forum state could provide the basis for personal jurisdiction over a nonresident defendant.

*Id.* at 780. The Court went on to find personal jurisdiction over a non-resident defendant proper where the defendant had an open-running credit account with a Delaware plaintiff and placed in excess of 500 orders with that plaintiff. *Id.* at 781. In the instant case, Special Electric while in Wisconsin is alleged to have referred an unsolicited purchase order to an affiliated corporation. Huxley points to no act of Special Electric in Delaware such as a phone call into the state that establishes an adequate basis to extend personal jurisdiction. It cannot be said that Special Electric's referral indicates that it purportedly availed itself of the privilege of acting in the forum state or caused a consequence in the forum state. *See id.* at 781. On the basis of the facts presented, Special Materials, a third-party defendant in this case, is the proper party to be before this Court with respect to the supply of asbestos paper to plaintiff's employer. Similarly, it cannot be said that Special Electric contracted to

---

**8.** The deposition testimony of Paul Reynier indicates that he did not recall ordering from a particular Special companies or whether the Special companies told him when calling the "800" number which company he was dealing with. (Doc. 212A, Ex. 4).

send asbestos paper into Delaware. Again, Special Materials appears to be the party that contracted with Haveg to supply the asbestos paper in the State. *See* 10 *Del.C.* § 3104(c)(2); *Moore v. Little Giant Industries, Inc.,* 513 F.Supp. 1043, 1046–48 (D.Del. 1981), *aff'd,* 681 F.2d 807 (3d Cir.1982). A gratuitous referral not performed in Delaware does not constitute a transaction in Delaware. Having found that Special Electric did not supply asbestos to the plaintiff's employer, the conclusion must be reached that subsections 3104(c)(3) & (4) do not confer jurisdiction over the third-party defendant. Special Electric cannot be said to have committed a tort when it did not supply any asbestos.

■ Huxley next urges that either each of the companies was an agent for the other in procuring and selling materials or the companies were so interchangeable that they were all agents and principals for each other.[9] This theory proceeds along the lines that the amended third-party complaint,[10] together with the facts of record, warrants a finding of in personam jurisdiction. Huxley also argues that each of the Special companies is the alter ego of the others and therefore, all are subject to personal jurisdiction in Delaware.

The facts of record upon which Huxley relies are that two of the three triumvirate Special companies, Special Materials and Special Materials of Delaware, are conceded to have sold asbestos products in Delaware and are thus amenable to personal jurisdiction. Huxley goes on to argue that as a corollary of Special Electric's relationship with them, it is also amenable to in personam jurisdiction in Delaware. The specifics of the inter-company relationship upon which Huxley relies are that "the triumvirate conducted their business from the same address, [allegedly] utilized the same staff for taking orders and filling orders,[11] had

the same principal shareholder, operating officer and all shared the same phone number without the answerer specifying which entity was being reached." [12] In addition, an order erroneously placed with one member of the triumvirate would be filled by the correct entity. The entities also shared the same logo, even though using different names and they shared the same stationery by deleting the incorrect corporate name and interlineating the name of the appropriate corporate entity. In short, Huxley urges that common majority ownership, shared headquarters, directors, officers, staff, supplies and equipment make all corporations involved in such an arrangement amenable to personal jurisdiction if there is personal jurisdiction over one of them.

Huxley, relying upon *Finnegan Construction Co. v. Robino-Ladd Co.,* 354 A.2d 142 (Del.Super.1976), claims that under the doctrine of apparent authority, Special Electric is the agent of Special Materials. Huxley argues that Special Materials has placed Special Electric in such a position that Haveg was justified in believing that Special Electric was an agent for Special Materials. *See id.,* at 145. Third-party defendant, Special Electric, argues that Huxley's reliance upon *Finnegan Construction Co.* is misplaced. Special Electric argues that nothing in the record indicates that Haveg relied upon an agency relationship between Special Electric and Special Materials in dealing with the Special companies.

The Court agrees with Special Electric's position on the apparent authority of Special Electric as agent for Special Materials. The record indicates that Haveg did not know when it called the "800" number for the Special companies which company it was addressing.[13] The record does not indicate, however, that this confusion led Haveg to believe that Special Electric was an agent for Special Materials. If anything,

---

**9.** Doc. 212, p. 7.

**10.** The third-party defendants "sold, supplied, distributed, merchandised or placed into the stream of commerce asbestos or asbestos-containing materials." Doc. 88 ¶ 26.

**11.** This fact is contested by Special Electric but assumed to be true for purposes of this motion.

**12.** Doc. 212, p. 6.

**13.** Doc. 212A, Ex. 4, P. 16 of Raynier Deposition taken Sept. 15, 1981.

the record indicates that Haveg assumed it was dealing with the appropriate company whenever it called the "800" number. Haveg did not differentiate among the companies when placing an order.[14] Since apparently the same person at the Special companies often took orders for all Special companies, Haveg had no need to make such a differentiation.[15] Haveg appears to have assumed that the order would be processed through the appropriate entity.[16] With respect to the 1972 and 1977 sales, apparently Haveg sent the purchase orders immediately after placing the orders by phone by calling the "800" number.[17] The record indicates that Haveg was not in the practice of determining which Special company would process an order. Apparently, Haveg simply assumed that these two orders would be processed through Special Electric. The record does not indicate that anyone at any of the Special companies told Haveg to place the orders for asbestos paper with Special Electric. Having failed to establish that Haveg relied upon any actions of Special Materials, the Court concludes that Huxley has failed to establish that Special Electric was an agent for Special Materials.[18] Thus, the Court need not consider whether an agent of a corporation is subject to the Court's jurisdiction because the principal corporation is subject to the Court's personal jurisdiction.[19]

■ Finally, Huxley argues that each of the Special companies is an instrumentality or alter ego of the other and, therefore, if one is subject to the Court's jurisdiction then all are subject. Huxley relies primarily upon *Avco Delta Corp. Canada Ltd. v.*

*United States,* 540 F.2d 258, 264 (7th Cir. 1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977), where the court stated the elements which must be present for one corporation to be liable for the debts of another: (1) that one corporation control the other to such a degree that the other corporation has become a mere instrumentality; (2) that one corporation commits fraud or wrong through the other corporation; and (3) that the controlling corporation causes unjust loss or injury to the claimant. Assuming such a test could be applicable in the context of personal jurisdiction, Huxley has failed to establish the necessary three elements in the instant case. There is no evidence that Special Materials controls Special Electric or that Special Materials has committed fraud through Special Electric. Huxley has not alleged that Special Electric's or Special Materials' paid-in capital surplus is inadequate or that the companies failed to maintain customary formalities when dealing with each other. That the companies failed to maintain their respective identities when dealing with third parties and that they shared offices, telephone number, employees, and owner are not sufficient to treat the companies as one for purposes of personal jurisdiction. Moreover, the nature of the relationship among the Special companies has not caused injury to Haveg, Huxley or the plaintiff. Haveg received the asbestos paper ordered in 1972 and 1977. Huxley will be able to attempt to seek indemnification or contribution from Special Materials in this action and from Spe-

14. Doc. 212A, Ex. 4, p. 10 of Raynier Deposition taken Sept. 15, 1981.

15. Doc. 212A, Ex. 4, pp. 16, 34, 38 of Raynier Deposition taken Sept. 15, 1981.

16. Doc. 212A, Ex. 4, p. 10 of Raynier Deposition taken Sept. 15, 1981.

17. Doc. 216, Ex. A & Ex. B—Haveg Purchase Orders Nos. 55965 & 73193.

18. Huxley's reliance on an apparent authority theory is misplaced for another reason. Under the doctrine of apparent authority, a principal is bound by the acts of a person placed by the principal in a position where third parties could reasonably assume that person was an agent of the principal. The object of the doctrine is to bind the principal. In the present case, Huxley is not trying to bind the alleged principal, Special Materials, who is already a party to this case, but the alleged agent, Special Electric. The application of the doctrine of apparent authority to the facts of this case seems inconsistent with the very purpose of the doctrine.

19. In addition, there is nothing in the record to support Huxley's theory that Special Materials acted as a type of "sub-contractor" or agent for Special Electric.

cial Electric in an appropriate jurisdiction. Finally, the plaintiff's injury allegedly arose from the asbestos and not the corporate structure of the Special companies.

The refusal to extend personal jurisdiction over Special Electric is consistent with *Perry v. American Motors Corp.,* 353 A.2d 589, 590–91 (Del.Super.1976). In *Perry,* the court recognized that a corporation could be subject to personal jurisdiction in Delaware if its "alter ego" corporation were so subject. Although the court did not hold that a foreign corporation could be bound by the acts of an alter ego corporation, the court cited with approval cases holding that a foreign corporation could not arrange for independent corporations subject to suit in Delaware to conduct business to avoid the jurisdictional effect of the foreign corporation's deliberate contacts with the purchasing public. Assuming such an alter ego theory is valid in Delaware, applying the theory to the present case would not result in a finding that Special Electric is subject to personal jurisdiction in Delaware. No where does the record indicate that Special Materials structured its affairs so that it would avoid being subject to personal jurisdiction in Delaware. Special Materials has not challenged jurisdiction in Delaware. Similarly, Special Electric has done nothing to avoid personal jurisdiction. Special Electric does not do or solicit business in Delaware. The only contact with Delaware arose when Haveg of its own initiative and possibly mistakenly sent two purchase orders for a small amount of asbestos paper to Special Electric which were apparently filled by Special Materials. The actions of Special Electric cannot be construed as a deliberate attempt by Special Electric to avoid the jurisdictional effect of its deliberate acts in Delaware since Special Electric has not done anything in Delaware.

In the absence of a showing of fraud or injustice, the Court will not extend jurisdiction over Special Electric for the acts of its alleged alter ego Special Materials. Therefore, third-party defendant Special Electric's motion to dismiss will be granted.