Frieda H. RABKIN, Harry Lewis, Eric Emory, Alan Emory, Nancy Emory, Howard Greenwald, Werner Klugman and Samuel Kaufman, Plaintiffs,

v.

PHILIP A. HUNT CHEMICAL CORPORATION, Olin Corporation, Olin Acquisition Corporation, Alfred T. Blomquist, Richard R. Berry, John W. Johnstone, Jr., Robert T. Zetena, John M. Henske, John R. Bonniwell, Charles J. Lause, Stephen R. Petschek and George J. Haufler, Defendants.

Civ. A. No. 7547.

Court of Chancery of Delaware, New Castle County.

Submitted: July 10, 1986.
Decided: Dec. 4, 1986.

---

R. Franklin Balotti and C. Stephen Bigler of Richards, Layton & Finger, Wilmington and Cravath, Swaine & Moore, New York City, for defendants Olin Corp., Olin Acquisition Corp., Philip A. Hunt Chemical Corp., John M. Henske, Richard R. Berry and John W. Johnstone, Jr.

Michael Hanrahan of Prickett, Jones, Elliot, Kristol & Schnee, Wilmington and Shea & Gould, New York City, for defendants John R. Bonniwell, Charles J. Lause, Stephen R. Petschek and George J. Haufler.

Martin P. Tully of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants Alfred T. Blomquist and Robert T. Zetena.

## OPINION

BERGER, Vice Chancellor.

This is an action brought by the former minority stockholders of Philip A. Hunt Chemical Corporation ("Hunt") challenging the cash out merger of Hunt with its majority stockholder, Olin Corporation ("Olin"). The original complaint named as defendants Hunt, Olin and certain of Hunt's directors. Shortly after this action was filed, plaintiffs moved for a preliminary injunction and for leave to file a supplemental and amended complaint. Defendants moved to dismiss on various grounds.

Plaintiffs' motions were denied and defendants' motions were granted on the ground that appraisal was plaintiffs' exclusive remedy. *See Rabkin v. Philip A. Hunt Chemical Corp.*, Del. Ch., 480 A.2d 655 (1984). The Delaware Supreme Court reversed and remanded with instructions that plaintiffs be allowed to file an amended and supplemental complaint. *See Rabkin v. Philip A. Hunt Chemical Corp.*, Del.Supr., 498 A.2d 1099 (1985). Thereafter, plaintiffs filed a Consolidated Amended and Supplemental Class Action Complaint (the "Complaint") that, among other things, added as defendants Olin Acquisition Corporation ("Olin Acquisition") and Richard R. Berry ("Berry") and John W. Johnstone, Jr. ("Johnstone"), both Exec-

Joseph A. Rosenthal and Norman M. Monhait of Morris and Rosenthal, P.A., Wilmington, Wolf, Popper, Ross, Wolf & Jones, Garwin, Bronzaft & Gerstein, Lowey, Dannenberg & Knapp, P.C., and Tenzer, Greenblatt, Fallon & Kaplan, New York City, for plaintiffs.

utive Vice Presidents of Olin and directors of Hunt. This is the decision, after briefing and argument, on defendants' new or renewed motions to dismiss.

Generally, the Complaint alleges the following facts about the contested transaction. Prior to March 1, 1983, Turner & Newall, Inc. ("Turner & Newall") owned approximately 63% of Hunt's common stock. On December 27, 1982, Olin and Turner & Newall entered into a stock purchase agreement whereby Olin acquired Turner & Newall's controlling block of Hunt stock for $25 per share. At Turner & Newall's insistence, the stock purchase agreement required Olin to pay $25 per share if, during the one year commencing March 1, 1983, Olin or an affiliate acquired all or substantially all of the remaining outstanding shares of Hunt (the "price commitment").

Olin disclosed the price commitment both in a press release issued at the time the stock purchase agreement was executed and in a Schedule 13D filed with the Securities and Exchange Commission shortly thereafter. The Schedule 13D stated that any acquisition made after the expiration of the one year price commitment might be at a price greater or less than $25 per share, "depending upon developments with respect to the business of the Company and general economic and other conditions" (the "Schedule 13D commitment"). (¶ 21 quoting the Schedule 13D).

A confidential memorandum prepared by Olin's management (the "Berardino memorandum") allegedly demonstrates that Olin had decided to acquire the minority interest in Hunt long before the expiration of the one year price commitment. However, Olin purposely waited until three weeks after its expiration to propose the merger at $20 per share.

## I.

■ Olin bases its motion on lack of personal jurisdiction. It is a Virginia corporation with its principal place of business in Stamford, Connecticut. Although not alleged in the Complaint, since 1952 Olin has been registered as a foreign corpora-

tion qualified to do business in Delaware and has appointed an agent for service of process pursuant to 8 *Del.C.* § 371. Notwithstanding its registration as a foreign corporation, Olin argues that it does not have the constitutionally mandated minimum contacts necessary to be subjected to *in personam* jurisdiction. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). From the record, Olin's jurisdictional contacts with Delaware, in addition to its registration as a foreign corporation, are: (1) it created a subsidiary Delaware corporation (Olin Acquisition) for the purpose of implementing the merger with Hunt; (2) Olin currently has a total of $5,933 invested in assets in Delaware; (3) the Delaware telephone directory has a listing for "Olin Water Services" with an address and telephone number in Philadelphia, Pennsylvania; and (4) Olin caused a certificate of merger to be filed in Delaware giving effect to the transaction at issue.

A two-step analysis must be applied to determine *in personam* jurisdiction. First, the Court must decide whether Delaware law provides a basis for the assertion of jurisdiction. If so, it must determine whether subjecting Olin to jurisdiction in Delaware would be consistent with the due process guarantees of the Fourteenth Amendment. *See La Nuova D & B S.p.A. v. Bowe Co., Inc.*, Del.Supr., 513 A.2d 764 (1986). Olin does not appear to question the Delaware law component of this analysis. Pursuant to 8 *Del.C.* § 371, Olin designated a registered agent within Delaware and, pursuant to 8 *Del.C.* § 376, the designated registered agent may be served with all process issued out of any court of this state.

Turning to the constitutional question, Olin must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, *supra* at 316, *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). In deciding whether such minimum contacts exist, the Court must

consider the relationship between the defendants, the litigation and the forum, *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), to determine whether the " 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in [Delaware]." *Kulko v. Superior Court of California*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978). These constitutional standards are satisfied if Olin has "purposely avail[ed] itself of the privilege of conducting activities within [Delaware], thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

Applying these standards, I find that Olin has the requisite minimum contacts with Delaware. It may be true, as Olin argues, that the mere registration to do business in Delaware and appointment of an agent for service of process would be insufficient, standing alone, to confer jurisdiction. *See In Re Mid–Atlantic Toyota*, 525 F.Supp. 1265, *modified*, 541 F.Supp. 62 (D.Md.1981). However, that is not Olin's only contact with Delaware. Olin chose to incorporate a Delaware subsidiary and, through that subsidiary, avail itself of Delaware law to effectuate the merger attacked in this litigation.

In *Papendick v. Bosch*, Del.Supr., 410 A.2d 148 (1979), *cert. denied, Bosch v. Papendick*, 446 U.S. 909, 100 S.Ct. 1837, 64 L.Ed.2d 262 (1980), similar conduct by a foreign corporate defendant was held sufficient to confer jurisdiction. In *Papendick*, plaintiff claimed to be entitled to a finder's fee for having provided the foreign defendant with the name of a company that might be interested in selling defendant a substantial block of stock. Defendant did, in fact, purchase the stock through a Delaware subsidiary created as a vehicle for the acquisition. The Supreme Court reasoned:

> We do not believe that the *International Shoe* "minimum contact" due process standards were intended to deprive Delaware courts of jurisdiction by permitting an alien corporation to come into this State to create a Delaware corporate subsidiary for the purpose of implement-

ing a contract under the protection of and pursuant to powers granted by the laws of Delaware, and then be heard to say, in a suit arising from the very contract which the subsidiary was created to implement, that the only contact between it and Delaware was the "mere" ownership of stock of the subsidiary.

\* \* \* \* \* \*

> ...There is a controlling distinction, for present purposes, between the ownership of shares of stock acquired by purchase or grant as in *Shaffer*, on the one hand, and ownership arising from the purposeful utilization of the benefits and protections of the Delaware Corporation Law in activities related to the underlying cause of action, on the other hand. [Defendant] purposefully availed itself of the benefits and protections of the laws of the State of Delaware for financial gain in activities related to the cause of action. Therein lies the "minimum contact" sufficient to sustain the jurisdiction of Delaware's courts over [defendant].

*Id.* at 152.

Olin attempts to distinguish *Papendick* on the basis that plaintiffs here are attempting to obtain *in personam* jurisdiction pursuant to 8 *Del.C.* § 376 whereas the plaintiff in *Papendick* was asserting jurisdiction under 10 *Del.C.* § 366—the sequestration statute. I do not find this distinction significant. As the Court noted in *Papendick*, the rule of *Shaffer* requires that "all assertions of state-court jurisdiction ... be evaluated according to the standards set forth in *International Shoe* at its progeny." *Shaffer v. Heitner*, 433 U.S. at 212, 97 S.Ct. at 2584. Thus, the analysis applied in *Papendick* is appropriate here notwithstanding the differences in the methods by which jurisdiction is acquired.

The cases cited by Olin in support of its position, however, are distinguishable. In *Meeker v. Bryant*, Del. Ch., Civil Action No. 6245, Hartnett, V.C. (May 12, 1981) [available on WESTLAW, 1981 WL 7616] the foreign defendant acquired its controlling interest in its Delaware subsidiary through market purchases and did not cre-

ate the subsidiary to facilitate the contested transaction. *Rothchild International Corporation v. Liggett Group, Inc., et al.*, Del. Ch., Civil Action No. 6239, Brown, V.C. (July 14, 1981) [available on WEST-LAW, 1981 WL 7624], likewise, is inapposite. The court there determined that plaintiff was unable to effect service on the foreign defendant pursuant to 10 *Del.C.* § 3104 or 8 *Del.C.* § 382 because the requirements of those statutes had not been met. Service on the foreign corporation's Delaware subsidiary also was found insufficient to obtain jurisdiction over the foreign parent because the subsidiary was not shown to be the agent or alter ego of the parent. In short, the issue of minimum contacts was not before the Court.[1] In *J. Royal Parker Associates, Inc. v. Parco, Brown and Root, Inc.*, Del. Ch., Civil Action No. 7013, Berger, V.C. (November 30, 1984) [available on WESTLAW, 1984 WL 8255], the analysis was limited to the applicablity of Delaware's long arm statute as opposed to due process standards. *See also Cropper v. Rego Distribution Center, Inc.*, 461 F.Supp. 529 (D.Del.1978) (addressing applicability of 8 *Del.C.* § 382). In sum, I find that Olin has sufficient minimum contacts with Delaware to sustain jurisdiction and Olin's motion to dismiss is denied.

## II.

■ Olin Acquisition moved to dismiss on the grounds that it was not amenable to service or properly served and that the Complaint fails to state a claim against it in any event. As noted earlier, Olin Acquisition was not one of the original defendants in this action. Rather, it was added more than a year after Olin Acquisition was merged into Hunt and legally ceased to exist. At oral argument, plaintiffs' counsel acknowledged that dismissal is appropriate. However, the purported claim against Olin Acquisition still must be analyzed to determine whether there is a viable claim against Hunt, the surviving corporation in the merger with Olin Acquisition. Pursuant to 8 *Del.C.* § 259 and the terms of the merger agreement, plaintiffs contend that Hunt assumes the liabilities of Olin Acquisition. Thus, they say, if the Complaint states a claim against Olin Acquisition, it must be deemed to state a claim against Hunt.

In their brief, plaintiffs contend that paragraphs 1, 4(b), 42 and 49(a) of the Complaint adequately state a claim that Olin Acquisition "knowingly facilitated" Olin's breach of fiduciary duty to Hunt's public stockholders. As a result, plaintiffs maintain that Olin Acquisition is secondarily liable for Olin's wrongs and that Hunt assumed Olin Acquisition's secondary liability.

After reviewing the cited paragraphs of the Complaint (as well as paragraph 11, mentioned by counsel for plaintiffs at oral argument), I find that the Complaint fails to state a claim against Olin Acquisition. Paragraphs 1, 4(b), 11 and 42 set forth the terms of the contested merger, certain of the parties' relationships and the duties they allegedly breached. Specifically, these paragraphs allege that (1) the public minority stockholders of Hunt were cashed out for $20 per share (¶ 1); (2) Olin Acquisition was a wholly-owned subsidiary of Olin formed for the sole purpose of acquiring Hunt (¶ 4(b)); (3) Olin, as Hunt's majority stockholder, and all of the corporate defendants owed fiduciary duties to Hunt's public stockholders (¶ 11); and (4) Olin controlled the outcome of the merger since the merger agreement did not require approval by a majority of the minority stockholders (¶ 42). Paragraph 49(a) of the Complaint alleges that Olin and certain of the individual defendants breached their fiduciary duty by intentionally waiting until the expiration of Olin's one year price commitment before effectuating the merger at $20 per share.

As Olin Acquisition correctly points out, none of these allegations (or, for that mat-

---

**1.** Significantly, the Court noted that "the act of forming [the subsidiary] for the aforesaid purpose and using the merger process under Delaware statutes to acquire ownership of [another corporation] may well constitute such a minimum contact as to subject [the foreign defendant] to service of process under the foreign attachment or sequestration statutes." *Id.* at 9.

ter, any of the other allegations in the Complaint) charge Olin Acquisition with any wrongdoing. At oral argument, plaintiffs explained their theory as follows: since Olin allegedly breached its fiduciary duty in connection with the merger and Olin Acquisition was the corporate vehicle through which the merger was consummated, the subsidiary was a knowing participant liable for its parent's breach.

In order to state a claim under this theory, plaintiffs would have to allege, "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, and (3) knowing participation in that breach by [Olin Acquisition]." *Penn Mart Realty Company v. Becker*, Del. Ch., 298 A.2d 349, 351 (1972). The Complaint, however, contains no allegation of Olin Acquisition's "knowing participation" in Olin's breach of fiduciary duty. Indeed, there is no allegation that Olin Acquisition even existed at the time the merger proposal was presented to Hunt.

Inasmuch as the Complaint fails to state a claim against Olin Acquisition, it follows that Hunt, also, must be dismissed. There are no allegations of wrongdoing against Hunt and plaintiffs have acknowledged that their claim against Hunt derives solely from their purported claim against Olin Acquisition.

### III.

Messrs. Henske, Johnstone and Berry, the Olin nominees on Hunt's board of directors (the "Olin directors") moved to dismiss on the ground that the only claim directed to them is a derivative claim that cannot be prosecuted by these plaintiffs. The Olin directors are sued in their capacity as directors of Hunt and are charged with having breached their duty of loyalty (1) by failing to inform Hunt of the contents of the Berardino memorandum and (2) by failing to inform Hunt that Olin had considered paying more than $20 per share in the merger. (Complaint, ¶ 51).

The Berardino memorandum noted that if Olin acquired the minority stock in Hunt prior to March 1, 1984, it would be contractually obligated to pay $25 per share.

However, by waiting until after the expiration of the contractual price commitment, Olin could save approximately $7.3 million by paying $21.50 per share. The Supreme Court stated that the Berardino memorandum "raises unanswered questions about the recognition by ... [the Olin directors] of their undiminished duty of loyalty to *Hunt*." *Rabkin v. Philip A. Hunt Chemical Corp.*, 498 A.2d at 1106 (emphasis added). Focusing on this language, the Olin directors argue that their breach, if any, was of a duty owed to Hunt directly and to Hunt's stockholders only derivatively. Since plaintiffs are no longer stockholders of Hunt, they may not pursue this derivative claim on behalf of Hunt. *See Schreiber v. Carney*, Del. Ch., 447 A.2d 17 (1982).

In analyzing whether the Complaint states a derivative or representative claim, the Court must look to the nature of the alleged wrong rather than the designation used by plaintiffs. *Moran v. Household International, Inc.*, Del. Ch., 490 A.2d 1059, *aff'd*, Del.Supr., 500 A.2d 1346 (1985). In *Elster v. American Airlines, Inc.*, Del. Ch., 100 A.2d 219 (1953), this Court held that an individual action may be maintained if the stockholder sustained a "special injury" and in *Moran* the standard was articulated as follows:

> To set out an individual action, the plaintiff must allege either "an injury which is separate and distinct from that suffered by other shareholders," [citations omitted] or a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation.

*Moran v. Household International, Inc.*, 490 A.2d at 1070. Most recently, the Delaware Supreme Court explained:

> In comparing the two-pronged test of *Moran* with the definition of the term "special injury" in *Elster*, it appears that the term encompasses both prongs of the *Moran* test. That is, a plaintiff alleges a special injury and may maintain an individual action if he complains of an injury distinct from that suffered by other shareholders or a wrong involving one of

·his contractual rights as a shareholder. Moreover, while *Moran* serves as a quite useful guide, the case should not be construed as establishing the only test for determining whether a claim is derivative or individual in nature. Rather, as was established in *Elster*, we must look ultimately to whether the plaintiff has alleged "special" injury, in whatever form. *Lipton and Ceasar v. News International, P.L.C. v. Warner Communications, Inc., et al.,* Del.Supr., 514 A.2d 1075, 1078, McNeilly, J. joined by Horsey, J. (1986).

Plaintiffs' claim directly attacks the Olin/Hunt merger as having failed to satisfy the standard of entire fairness required by *Weinberger v. U.O.P., Inc.,* Del.Supr., 457 A.2d 701 (1983). The Complaint seeks rescission or damages for the injuries allegedly suffered by the minority stockholders. The majority stockholder, Olin, certainly did not suffer any such injury. It acquired the company and, if plaintiffs' allegations are proven, wrongfully benefited from the merger. Thus, there can be no question but that plaintiffs are claiming an injury that was not suffered by all stockholders, but only by Hunt's minority stockholders.

The Olin directors do not address the injury suffered, relying instead on the nature of the alleged wrong. They argue that their fiduciary duties as Hunt directors ran to Hunt directly and to its stockholders indirectly, or derivatively.

Several courts have expressed the general proposition that a breach of fiduciary duty claim is derivative. *See, e.g., McAndrews and Forbes Holdings, Inc. v. Revlon, Inc.,* Del.Ch., Civil Action No. 8126, Walsh, J. (October 9, 1985); *Gearheart Industries, Inc. v. Smith International, Inc.,* 741 F.2d 707 (5th Cir.1984). However, in *Revlon* and *Gearheart,* as with the other cases cited by the Olin directors, the breach of fiduciary duty claim was not a direct attack on a merger or other similar transaction. As a result, the breach of fiduciary duty (e.g., waste) injured the corporation as a whole and all of its stockholders on a pro rata basis. Here, by contrast, the alleged wrong did not work an injury either to Hunt or its majority stockholder. Accordingly, following the standard in *News International,* I find that the Complaint states a direct or representative claim against the Olin directors. *See also* Balotti and Finkelstein, *The Delaware Law of Corporations and Business Organizations* § 13.6 ("[E]xamples of claims giving rise to direct actions are: ... claims that a proposed merger, recapitalization, redemption, or similar transaction unfairly affects minority shareholders....").

## IV.

The six remaining Hunt directors— Messrs. Blomquist, Zetena, Bonniwell, Lause, Petschek and Haufler (the "Hunt directors")—moved to dismiss for failure to state a claim. They argue that the allegations in the Complaint, supplemented by certain facts set forth in the proxy statement (which was incorporated by reference in the Complaint), demonstrate that they exercised informed business judgment in responding to Olin's merger proposal. Thus, they say that the Complaint fails to state the only claim it purports to allege— one for breach of the fiduciary duty of care.

The Complaint recites the relevant events as follows: (1) on March 28, 1984, after Olin and Hunt issued a joint announcement of the proposed merger, the Hunt board of directors met and appointed a Special Committee of "outside" directors [2] (¶ 36, 37); (2) on April 4, 1984, the Special Committee retained an investment banking firm and a law firm to assist in its duties (¶ 37); (3) on May 10, 1984, counsel for plaintiffs met with the Special Committee and explained the basis for plaintiffs' charges against Olin and the Olin directors (¶ 38); (4) on the same day, the Special Committee was advised by its investment banker that a range of prices from $19 to $25 per share would be fair and the Special Committee then concluded that $20 was "fair but not generous" (¶ 39); (5) the Special Committee unanimously recommended that Olin consider raising the merger price,

---

**2.** Messrs. Bonniwell, Lause, Petschek and Haufler constituted the Special Committee.

but, on May 11, 1984 Olin advised that it would not increase the price (¶ 40); and (6) on May 14, 1984 the Special Committee met by teleconference and, on the following day, reported to the Hunt board of directors that it found $20 to be fair and recommended approval of the merger (¶ 42). In addition to these facts, the proxy statement discloses that the Special Committee had two additional meetings before May 10, 1984 and, that after plaintiffs' counsel discussed the law suit, the Special Committee reviewed the legal arguments raised by counsel for plaintiffs with its own lawyers. Proxy Statement at 5, 6.

Based upon these facts, the Complaint charges that the Hunt directors breached their fiduciary duties by (1) failing to learn the terms of Olin's price commitment or its Schedule 13D commitment; (2) failing to "press Olin's management" for disclosure of that information or for disclosure of Olin's intentions; (3) failing to require that the Special Committee consider the price commitment or the Schedule 13D commitment in considering the proposed merger; (4) failing to bargain at arms-length; and (5) giving rubber-stamp approval to the merger (¶ 52). In other words, plaintiffs complain about two separate wrongs—purported inadequacy of the Hunt directors' response to the merger proposal and their failure to act during the one year prior to the merger.

### A.

As plaintiffs acknowledge, the issue with respect to the Hunt directors' response to the merger proposal is whether they exercised informed business judgment. Gross negligence is the standard to be applied in deciding first, whether the directors' decisions were informed, and, if so, whether the directors may be held liable for reaching the wrong decision. *Smith v. Van Gorkom*, Del.Supr., 488 A.2d 858, 873 (1985).

While it is now settled that gross negligence is the appropriate legal standard, the question of what must be pleaded to state a claim for gross negligence in this context remains problematic. As the Supreme Court noted in *Aronson v. Lewis*, Del. Supr., 473 A.2d 805, 812 (1984), the applicable standard of care has been described in a variety of ways and, in the view of some commentators, those descriptions provide little guidance in evaluating potential liability:

> Assuming that one concludes that a particular expression creates liability only for acts of "gross negligence" ... the significant question becomes whether or not one has identified an outcome-determinative factor. Probably not. ... While we may be told, as in [*Penn Mart Realty Co. v. Becker*, Del.Ch., 298 A.2d 349 (1972)], that a director's "gross negligence" will expose him to liability, little attempt is made to describe or define "gross negligence."

Veasey and Manning, *Codified Standard– Safe Harbor or Unchartered Reef?* 35 Bus. Law. 919, 928 (1980).

In the corporate area, gross negligence would appear to mean, "reckless indifference to or a deliberate disregard of the stockholders," *Allaun v. Consolidated Oil Co.*, Del.Ch., 147 A. 257, 261 (1929) or actions which are "without the bounds of reason," *Gimbel v. Signal Companies, Inc.*, Del.Ch., 316 A.2d 599, 615, *aff'd, Gimbel v. Signal Companies, Inc.*, Del.Supr., 316 A.2d 619 (1974). These articulations arguably provide a higher threshold for liability than does the definition of gross negligence in general tort law. *See Laird v. State of Delaware*, Del.Super., 79C–JA– 97, Walsh, J. (February 9, 1984) slip op. at 4 (" 'gross negligence' is ... more than ordinary inadvertence but less than conscious indifference to consequences."); Prosser, *Law of Torts* at 212 (5th ed. 1984) (same).

Under any of these definitions, however, I find that the Complaint does not state a claim against the Hunt directors for failure to exercise due care in responding to the merger proposal. The Special Committee consulted with independent legal and financial advisors; considered the merger proposal on at least four occasions over a period of approximately six weeks; and reviewed the allegations in plaintiffs' origi-

nal complaint first with counsel for plaintiffs and then with its own lawyers. Consistent with the advice of its investment banker, the Special Committee concluded that the offered price was fair. However, before recommending the merger at that price, the Special Committee asked Olin to raise its price. After Olin refused, the Special Committee recommended approval of the merger. From these facts, no inference could be drawn either that the Hunt directors were uninformed or were grossly negligent in recommending the merger.

Plaintiffs focus on two purported weaknesses in this course of conduct. First, they allege that the Hunt directors were unaware of the Olin price commitment and the Schedule 13D commitment. As a result, the Special Committee's investment banker was never asked to consider the impact of those commitments on the fairness of the offered price. Assuming, as one must for purposes of this motion, that the Special Committee initially was unaware of the Olin commitments, that information was provided by plaintiffs' counsel before the Special Committee recommended the merger. Thus, any claim that the Hunt directors were uninformed is defeated by plaintiffs' own allegations.

The charge that the Special Committee was grossly negligent in failing to seek advice from its investment banker as to the impact of the Olin commitments on the merger price similarly is deficient. It is a legal, not a financial, question whether Olin's commitments had any bearing on the merger proposal. Thus, only if the legal question were answered in the affirmative would there be a basis for arguing that the investment banker should have been called upon to evaluate this issue. The Special Committee discussed the legal question with its independent counsel and there is nothing in the Complaint to suggest that the committee then ignored its counsel's advice. Thus, there is no reason to believe that the scope of the financial evaluation should have been expanded. Even if it arguably would have been more prudent to raise the commitments issue with the investment banker, the failure to do so does not amount to gross negligence.

Plaintiffs' second argument is directed at the Special Committee's attempt to obtain a higher price from Olin. Given the fact that the Special Committee had decided to ask Olin to increase the merger price, plaintiffs say that it was a breach of fiduciary duty thereafter to recommend the merger at the original price. In other words, plaintiffs suggest that once directors start to bargain for a better deal they are precluded from accepting the original proposal. Plaintiffs apparently derive this theory by weaving together three different cases to reach a legal premise advanced by none of them and inapplicable under the facts here alleged.

Plaintiffs rely on *Smith v. Van Gorkom*, 488 A.2d at 881, for the proposition that a board may not allow itself to be "stamped-ed into a patently unadvised act." Rather, directors have an affirmative duty to obtain the highest possible price for their stockholders. *Revlon, Inc. v. McAndrews & Forbes Holdings, Inc.*, Del.Supr., 506 A.2d 173 (1986). Thus, a Special Committee must vigorously defend the interests of the minority stockholders by opposing an inadequate merger proposal, as in *Joseph v. Shell Oil Co.*, Del.Ch., 482 A.2d 335 (1984). Although each of these legal principles is sound, they do not, in combination, require directors to oppose a merger simply because they were unsuccessful in attempts to negotiate a higher price.

Moreover, there are no parallels between the facts of those three cases and the allegations in plaintiffs' Complaint. In *Van Gorkom*, the defendant directors were held liable for breach of the fiduciary duty of care where they approved a merger proposal (1) during the two hour meeting at which the subject was first raised; (2) based solely upon a twenty minute oral presentation of the merger terms; and (3) without being informed as to the intrinsic value of the company. The Special Committee, by contrast, met on at least four occasions over six weeks, obtained independent legal and financial advice, considered plaintiffs' allegations and attempted to obtain a higher price before recommending the merger.

The facts in *Revlon* bear absolutely no resemblance to the facts in this case. In *Revlon,* after it had become apparent that the defendant company was up for sale, the directors were charged with the duty of obtaining the highest possible price for their stockholders. Plaintiffs' Complaint contains no allegations suggesting that there was or could have been an auction for Hunt. Indeed, plaintiffs apparently recognize that Olin, as the majority stockholder, was the only viable purchaser since their concerns are directed solely at the alleged inadequacy of the Hunt directors' negotiations with Olin.

Finally, in *Shell,* a $55 per share merger proposal was rejected by the board's Special Committee after its investment banker advised that the stock was worth $80–85 per share and the company's president opined that the stock might be worth as much as $91 per share. Hunt's Special Committee, by contrast, was advised by its investment banker that $20 per share was fair.

A fair reading of the Complaint reveals that plaintiffs are simply dissatisfied with the manner in which the Hunt directors exercised their business judgment. Standing alone, however, such dissatisfaction fails to state a claim. There are no factual allegations which, if proven, would result in a finding that the Hunt directors were uninformed or were grossly negligent in reaching their conclusions.

### B.

 Plaintiffs' claim with respect to the Hunt directors' failure to act during the one year price commitment, however, must be measured against different standards. The business judgment rule may apply to a deliberate decision not to act, but it has no bearing on a claim that directors' inaction was the result of ignorance. *Aronson v. Lewis,* Del.Supr., 473 A.2d 805, 813 (1984). Directors will be held liable for injuries

caused as a result of their neglect where they fail to use "that amount of care which ordinarily careful and prudent men would use in similar circumstances." *Graham v. Allis Chalmers Manufacturing Co.,* Del. Supr., 188 A.2d 125, 130 (1963).

As to the "neglect" claim, the Complaint alleges that the Hunt directors never learned the terms of the stock purchase agreement between Olin and Turner & Newall and never asked Olin what its intentions were with respect to the acquisition of Hunt's publicly held stock. Although there is nothing in the Complaint to explain how the Hunt directors' failure to act prior to March 1, 1984 resulted in any injury [3], the Complaint does contain a general allegation of damages following the specific allegations of neglect. (¶ 53).

I find that the Hunt directors' alleged failure to learn of Olin's price commitment states a claim. It may well be that, in the exercise of ordinary care, the Hunt directors should have known that the company's controlling stockholder had a one year contractual commitment to the minority stockholders. Whether the Hunt directors' alleged ignorance caused any injury is questionable. However, for purposes of this motion, the fact that damages are alleged is sufficient to sustain plaintiffs' claim.

Based upon the foregoing, the Hunt directors' motion to dismiss is granted except as to the claim based upon their failure to act during the one year prior to March 1, 1984.

IT IS SO ORDERED.

---

**3.** At oral argument, plaintiffs' counsel merely stated that, if the Hunt directors had pressed

Olin, the result might have been different.