James A. POTTER, as Trust Administrator of the MEI Liquidating Estates created under the Amended Plan of Reorganization of the Official Committee of Unsecured Creditors for MEI Diversified, Inc., MEI Salon Corp., Essanelle Salon Co., The Glemby Company, Inc., Maxim's Beauty Salons, Inc., Sophia Beauty Salons (N.Y.), Inc., Glemby Int'l Washington, Inc., Glemby Int'l Missouri, Inc., Salon Service, Inc., Appellant,

v.

Carl R. POHLAD, et al., Respondents.

No. C5–96–1921.

Court of Appeals of Minnesota.

March 4, 1997.

Craig W. Gagnon, Edward T. Wahl, Peter R. Bisio, Oppenheimer Wolff & Donnelly, Minneapolis, for Appellant.

Gregory P. Joseph, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Respondents.

David P. Pearson, Thomas H. Boyd, Winthrop & Weinstine, St. Paul, for Respondents.

Considered and decided by LANSING, P.J., PETERSON and MANSUR, JJ.*

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

LANSING, Judge.

A trust administrator brought suit against three corporate officers alleging violation of their fiduciary duties after the corporation was bankrupted by a failed acquisition and joint venture. The district court granted summary judgment in favor of the officers, ruling that they were protected by the business judgment rule. We affirm.

## FACTS

This dispute arises out of a corporate acquisition that is faulted for eventually bankrupting MEI, the acquiring corporation. MEI is a Delaware corporation formed in 1986. Respondents Carl Pohlad and Donald Benson are officers as well as directors of MEI. Respondent James Cesario is solely an officer of MEI. Appellant James Potter is the trust administrator representing the interests of MEI's creditors pursuant to MEI's reorganization after bankruptcy.

In 1989 MEI officers met with Myron Kunin and Paul Finkelstein to discuss a possible investment in the beauty salon industry. Kunin was the majority shareholder of Regis Corporation. He also owned Maxim's Beauty Salons, Inc., and, through Regis, was the majority shareholder in Essanelle Salon Co. Finkelstein was a shareholder in his family's business, the Glemby Company, which also operated beauty salons. Finkelstein was also the president of and a shareholder in Regis.

The acquisition was structured as a joint venture between MEI and Regis in which Maxim's, Essanelle, and Glemby would be acquired and combined into a new corporation, MEI–Regis, which would be run by Kunin, Finkelstein and Regis. The deal was approved by MEI's board of directors on the recommendation of the corporation's officers in August 1990.

Within one year MEI began losing money on the acquisition, and it terminated Regis's management contract. In 1991 and 1992, MEI brought lawsuits against both Glemby

and Regis alleging fraud in connection with the acquisition and Regis's management of the new corporation. In 1993 MEI filed for bankruptcy and its reorganization was approved in 1994. Potter was appointed as trust administrator of the liquidating assets and brought this lawsuit against MEI's corporate officers on behalf of the creditors and equity security holders of MEI. Potter appeals the district court's summary judgment dismissing his claims.

## ISSUES

1. (a) Did the district court apply an incorrect standard in determining that, as a matter of law, the respondent officers did not violate their duty of care?

(b) Did the district court correctly apply the law to the facts in determining that, as a matter of law, the respondent officers did not violate their duty of care?

2. Did the district court apply incorrect law in determining that the claim for breach of the duty of good faith was meritless?

3. Did the district court err in failing to address the claim for breach of the duty of candor?

## ANALYSIS

The fiduciary duties of a corporation's officers and directors are generally governed by the law of the state of incorporation. See 3 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations,* § 840 (1994). MEI is a Delaware corporation, and the fiduciary obligations of a Delaware corporation's officers and directors are determined by application of Delaware law. *Weiss v. Kay Jewelry Stores, Inc.,* 470 F.2d 1259, 1268 (D.C.Cir. 1972).

Cases challenging corporate practices implicate the business judgment rule, a common law principle that functions as a presumption to insulate the directors and officers [1] of a corporation from judicial

---

**1.** "To a great extent, the rules governing liability are the same whether the officer sued is a director or some other officer such as the president, vice president, secretary, * * * ." 3 Fletch-

er, *supra,* § 991. But an officer's duties may be more expansive than those of a director since directors may rely on the management decisions and recommendations of officers. *See id.* We

evaluation of their corporate decisions. *See generally* 3A Fletcher, *supra,* § 1029. The rationale for the rule lies mainly in the assumption that courts are ill equipped to second-guess the business decisions of corporate professionals. *Solash v. Telex Corp.,* 1987–88 Fed.Sec.L.Rep. (CCH) ¶ 93,608, at 97,727, 1988 WL 3587 (Del. Ch. Jan. 19, 1988).

■ The rule posits "a powerful presumption" that a court will not interfere with decisions made by a loyal and informed board. *See Cede & Co. v. Technicolor, Inc.,* 634 A.2d 345, 361 (Del.1993), *modified,* 636 A.2d 956 (Del.1994). It is the claimant's burden to rebut this presumption with evidence "that directors, in reaching their challenged decision, breached any one of the *triads* of their fiduciary duty—good faith, loyalty or due care." *Id.* (citations omitted). If the plaintiffs meet their burden, then the business judgment rule will not apply, and the directors will have to show the "entire fairness" of the challenged transaction to the shareholder/creditor plaintiffs. *Id.* (citations omitted). If the rule does apply, i.e., if the decision is found to have been made by a loyal and informed board, then the decision will not be overturned by the courts unless it cannot be attributed to any "rational business purpose." *Id.* (citations omitted).

Potter claims that MEI officers breached three of their fiduciary duties: (1) the duty of care; (2) the duty of good faith; and (3) the duty of candor.

### I. Duty of Care

Potter asserts on appeal that the district court applied an incorrect standard in evaluating his duty of care claim. But we conclude that the district court discerned the correct standard from Delaware cases construing the duty of care, and we further conclude that the district court correctly applied this standard to the evidence.

■ As part of their fiduciary duties, corporate officers "have a duty to inform themselves, prior to making a business decision, of all material information reasonably

available to them. Having become so informed, they must then act with requisite care in the discharge of their duties." *Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984). This duty of care is judged under a gross negligence standard. *Id.; Kahn v. Roberts,* No. C.A. 12324, 1995 WL 745056, at *4 (Del. Ch. Dec.6, 1995), *aff'd sub nom. Kahn ex. rel. DeKalb Genetics Corp. v. Roberts,* 679 A.2d 460 (Del.1996). The court's role in evaluating the duty is to provide "an objective review of the process by which [the officers] reached the decision under review * * * ." *Kahn,* 1995 WL 745056, at *4 (citation omitted).

The Delaware courts have acknowledged the lack of a clear articulation of the "gross negligence" standard in the corporate context. *See, e.g., Rabkin v. Philip A. Hunt Chem. Corp.,* 547 A.2d 963, 970 (Del.Ch.1986) (citing E. Norman Veasey & William E. Manning, *Codified Standard—Safe Harbor or Unchartered Reef?* 35 Bus.Law. 919, 928 (1980)).

■ Despite this uncertainty, Delaware courts have repeatedly defined gross negligence as "reckless indifference to or a deliberate disregard of the whole body of stockholders" or actions that are "without the bounds of reason." *See Smith v. Van Gorkom,* 488 A.2d 858, 873 n. 13 (Del.1985); *Tomczak v. Morton Thiokol, Inc.,* 1990 Fed. Sec.L.Rep. (CCH) ¶ 95,327, at 96,585, 1990 WL 42607 (Del. Ch. Apr. 5, 1990); *Rabkin,* 547 A.2d at 970; *Gimbel v. Signal Cos., Inc.,* 316 A.2d 599, 615 (Del.Ch.1974), *aff'd* 316 A.2d 619 (Del.1974); (citing *Allaun v. Consolidated Oil Co.,* 147 A. 257, 261 (Del.Ch. 1929). It is evident from recent Delaware cases that the standard is very high. *See In re Caremark Int'l Inc. Derivative Litig.,* No. C.A. 13670, 1996 WL 549894 at *12, 1996 LEXIS 125, at *25 (Del. Ch. Sept. 25, 1996) (describing breach of duty of care as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.").

---

believe that judicial inquiry into the level of fiduciary duty owed is necessarily affected by the circumstances under which the dispute arises,

including whether the allegedly defective conduct was that of an officer or a director.

Potter urges this court to adopt the definition of gross negligence found in *Jardel Co. v. Hughes,* 523 A.2d 518, 530 (Del.1987). In that case the Delaware Supreme Court analogized gross negligence to the statutory definition of criminal negligence. But *Jardel* involved a tort claim in which a plaintiff was inappropriately awarded punitive damages. Under Delaware law, "recklessness" rather than mere "gross negligence" is required to recover punitive damages. *Id.* In dictum, the court noted that "[t]he concept of gross negligence continues to find application as a recovery threshold in cases of corporate director liability under the business judgment rule." *Id.* (citations omitted). But the *Jardel* court did not purport to define gross negligence for purposes of corporate director liability. And we decline to adopt a standard based on *Jardel* when the overwhelming majority of cases construing gross negligence in the corporate context accept the parameters of *Allaun* ("reckless indifference" and "deliberate disregard") and *Gimbel* ("without the bounds of reason"). As a result the district court did not err in selecting this standard to apply to the evidence.

Potter alternatively asserts that the district court applied an even higher standard than a gross negligence standard. Potter rests this argument on one sentence in the district court's memorandum: "In this Court's view plaintiff cannot establish that defendants' actions in approving the Regis acquisition were taken without *any rational business purpose.*" (Emphasis added.) We are not certain that such a standard would be an incorrect assessment of Delaware law on the issue. *See Gagliardi v. Trifoods Int'l, Inc.,* 683 A.2d 1049, 1053 (Del.Ch.1996) ("[W]here a director is independent and disinterested, there can be no liability for corporate loss, unless the facts are such that no person could possibly authorize such a transaction if he or she were attempting in good faith to meet their duty." (citing *Saxe v. Brady,* 184 A.2d 602 (Del.Ch.1962))). But even if the "rational business purpose" standard were incorrect and higher than the gross negligence standard, the district court's analysis reflects the application of the gross negligence standard as we have described it. The district court wrote: "Be-

cause plaintiffs have failed to establish self dealing or breach of good faith, they must prove that defendants' actions were grossly negligent in order to overcome the presumption of the business judgment rule. Gross negligence is the 'reckless indifference to or a deliberate disregard of the whole body of stockholder[s'] or actions which are 'without the bounds of reason.'" We believe this accurately construes Delaware law.

■ Potter's second challenge disputes the district court's application of the gross negligence standard to the facts. When reviewing a motion for summary judgment we consider the evidence in a light most favorable to the non-moving party. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). But even accepting Potter's allegations as true, we agree with the district court that the MEI officers' behavior, while undoubtedly imprudent in hindsight, did not, as a matter of law, rise to the level of gross negligence.

Potter alleges that MEI officers gave Regis full responsibility to conduct due diligence for the deal, inappropriately relied on Finkelstein and Kunin's representations about the businesses and the salon industry, and failed to monitor or evaluate Regis's due diligence efforts and Finkelstein and Kunin's projections. But such a delegation of duties and allocation of investigative resources is not "without the bounds of reason" and does not amount to "reckless indifference" to the appellant's interests. Indeed, "[a]n informed decision to delegate a task is as much an exercise of business judgment as any other." *Rosenblatt v. Getty Oil, Co.,* 493 A.2d 929, 943 (Del.1985) (citing *Aronson,* 473 A.2d at 813). Further, "the amount of information that it is prudent to have before a decision is made is itself a business judgment * * * ." *In re RJR Nabisco v. Shareholders Litig.,* 1988–89 Fed.Sec.L.Rep. (CCH) ¶ 94,194, at 91,714 (Del. Ch. May 19, 1989), *appeal dismissed,* 556 A.2d 1070 (Del.1989).

MEI's delegation of operational due diligence to Regis was not without reason. Regis had the operational expertise and the financial incentive to undertake an effective investigation into the deal. Regis had experience in the beauty salon industry; MEI

had none. The deal was structured as a joint venture, allotting a 20% equity interest in the resulting corporation to Regis. It was not reckless for MEI officers to rely on the due diligence efforts conducted by Regis in light of duties that Regis, as a joint venture partner, owed to MEI. (Those duties formed the basis for earlier litigation involving these parties.) In addition warrants and management bonuses were built into the deal to give Regis managers, including Kunin and Finkelstein, every incentive to effect a turnaround in the failing salons and make MEI–Regis a profitable company.

Second, Potter places much significance on the existence of a memorandum that, he asserts, shows the officers knew that Finkelstein and Kunin's representations were based on inadequate investigations. The parties dispute the admissibility of the memorandum into evidence. We need not resolve the admissibility dispute, but assume for purposes of our analysis that the document is admissible. The document, prepared in June 1992 by Steven Yoch, records a conversation in which an attorney reported to Yoch that MEI's outside counsel Joel Gottesman, two years earlier, had told one of the defendant officers that the deal should not proceed and that he had concerns about the due diligence that had been conducted.

We agree that this memorandum is the strongest evidence Potter puts forth in support of his claim. But even assuming that the memorandum is both admissible and believable, it does not establish "reckless indifference" or "deliberate disregard" of the shareholder and creditor interests. The memorandum at most establishes that the officers intentionally disregarded a warning from one attorney that the deal had been insufficiently researched. And the evidentiary strength of even this suggestion is undermined by the memorandum's remaining text in which Yoch records misgivings about the truth of the attorney's statements: "It is interesting to note that * * * I reviewed virtually all of Mr. Gottesman's notes from the transactions and [I] never saw any indication that Mr. Gottesman believed the transactions were flawed."

Third, Potter contends that MEI officers failed to inform the board of directors of material facts about the acquisition before the board's decision. Potter argues that the officers had an obligation to apprise the board of their reliance on Regis for operational due diligence, their reliance on Regis's projections, and their reliance on the professional abilities of Finkelstein and Kunin.

We agree that officers, as agents of the corporation, have an obligation to disclose information material to the board's ability to make an informed decision regarding major acquisitions. See Science Accessories Corp. v. Summagraphics Corp., 425 A.2d 957, 962 (Del.1980) (an agent has the "duty to disclose information that is relevant to the affairs of the agency entrusted to him."); cf. Mills Acquisition Co. v. Macmillan, Inc., 559 A.2d 1261, 1280 (Del.1989) (corporate directors have duty to disclose "all material information" when seeking shareholder approval). But the record contains plentiful evidence that MEI's outside directors knew what they were voting for when they approved the joint venture with Regis.

All of the outside directors now living filed affidavits attesting to their understanding of the deal prior to the acquisition. After reviewing these affidavits, we are confident that MEI officers did not violate their obligation to disclose material information to outside directors. Each outside director was aware that MEI had relied on Regis to perform operational due diligence and that Regis had calculated the projections. One outside director met separately with Finkelstein to evaluate the transaction and subsequently recommended the deal to the board. The outside directors, all experienced businesspersons, had all the information they had requested and believed necessary to make an informed decision regarding the acquisition. Directors are not expected to have "detailed information about all aspects of the operation of the enterprise." In re Caremark, 1996 WL 549894, at *12, 1996 LEXIS 125, at *41.

Finally, Potter charges that the district court did not consider an affidavit submitted by his expert witness that concludes that the due diligence efforts were grossly inadequate and the officers were "grossly negligent and

reckless" in managing the due diligence. But the conclusory statements of an expert cannot sustain Potter's claim. *See Giammalvo v. Sunshine Mining Co.*, No. C.A. 12842, 1994 WL 30547, at *9 n. 10 (Del.Ch. Jan.31, 1994) (stating that reliance on expert's conclusions is misplaced because gross negligence standard does not "contemplate the submission of hind-sight evidence" to show that board was incorrect), *aff'd*, 651 A.2d 787 (Del.1994). Under these circumstances, we conclude that the expert's opinion does not create a fact issue precluding summary judgment. Minn.R.Civ.P. 56.03; *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993) (concluding that an expert's affidavit must contain more than a "conclusory assertion about ultimate legal issues" to defeat summary judgment), *cert. denied*, —— U.S. ——, 114 S.Ct. 2133, 128 L.Ed.2d 863 (1994).

We conclude that the evidence does not provide a sufficient basis on which a reasonable person could determine the MEI officers were grossly negligent. The district court correctly determined that the officers were entitled to summary judgment as a matter of law.

## II. Duty of good faith

■ A showing that the directors of a corporation acted in bad faith will rebut the presumption of the business judgment rule. *Cede & Co.*, 634 A.2d at 361. Delaware courts analyzing claims of bad faith generally inquire into the motives of the board members. *See, e.g., Zirn v. VLI Corp.*, 681 A.2d 1050, 1061–62 (Del.1996) (finding lack of motive to deceive or mislead stockholders); *Van Gorkom*, 488 A.2d at 873 (noting that because there were no allegations of bad faith, considerations of motive were irrelevant to case); *Citron v. Fairchild Camera & Instrument Corp.*, 1988–89 Fed.Sec.L.Rep. (CCH) ¶ 93,-915 at 90,102, 1988 WL 53322 (Del. Ch. May 19, 1988) (noting that determination of bad faith requires inquiry into board's motives).

Potter urges that a showing of bad faith ought not require evidence of motive, but rather is satisfied with evidence of recklessness. But he concedes that no Delaware cases directly address the issue of whether officers who act recklessly in connection with an acquisition breach their duties of good faith. We decline to extend Delaware law when the Delaware courts themselves have not commented.

Bad faith is evidenced by a showing that the directors "knowingly or deliberately withheld information they knew to be material for the purpose of misleading shareholders." *Emerald Partners v. Berlin*, No. C.A. 9700, 1995 WL 600881, at *7 (Del.Ch. Sept.22, 1995). Potter has failed to provide any evidence that MEI officers deliberately withheld information from board members in order to mislead or deceive them. We agree with the district court that Potter's claim of bad faith must fail.

## III. Duty of candor

■ To the extent that a duty of candor exists separate from the duties of care and good faith, it entails the obligation to disclose all material information to shareholders when seeking shareholder approval. *Mills Acquisition Co.*, 559 A.2d at 1280. The transaction Potter challenges did not involve shareholder approval. Therefore, we do not believe the alleged violation of a duty of candor states a separate claim under Delaware law. Rather, the duty of candor, i.e., the obligation to disclose material information, is implied in the officer's relationship to the board which is charged with making informed decisions. We believe that this claim and its attendant allegations can only be analyzed in the context of the officers' duty of care. In that context, Potter has failed to demonstrate that any failure by MEI officers to inform the board of material information amounted to gross negligence.

## DECISION

Because the district court did not err in its interpretation of Delaware law and because the evidence was insufficient, as a matter of law, to support the alleged violations of corporate officers' fiduciary duties, summary judgment was appropriate.

**Affirmed.**

MARTIN J. MANSUR, Judge (concurring specially).

I concur in the opinion and write separately on the issue of the standard this court

must apply in determining if the respondents breached their duty of care under Delaware law.

Appellants argue that the respondent's alleged breach of duty should have been considered under a standard of gross negligence, "that is, was respondent's due diligence a gross deviation from the standard of conduct that a reasonable person would have observed." Appellants believe that the following conduct creates genuine issues of material fact precluding summary judgment: (1) MEI's counsel considered due diligence lacking and advised against the purchase; (2) respondents relied exclusively on Regis for operational due diligence; (3) MEI's access to Glemby's information and personnel was restricted; (4) Glemby deliberately withheld material information from MEI; (5) Regis was having financial difficulties that MEI failed to investigate properly; (6) Regis, not MEI, prepared the financial projections on which the acquisition was premised and MEI failed to verify the projections independently; (7) respondents failed to do background checks on Kunin and Finkelstein; (8) due diligence would have revealed that the "turn around" based on the profitability of Essanelle and Maxims was illusory; (9) respondents failed to determine if the proposed cuts in overhead of the merged companies would leave a viable company capable of generating cash; (10) financial projections regarding Regis were unrealistic; (11) respondents failed to fully investigate Regis's overwhelming debt and the conflict of interest involving Regis, Kunin and Finkelstein.

The affidavits filed by MEI's directors do not deny these allegations, but merely state that their behavior was consistent with past practices employed in acquisition of other business entities and that the directors approved the purchase knowing the risks involved.

If we applied the standard urged upon us by appellants, the allegations regarding respondents' behavior may create genuine issues of material fact. But we are required to apply the Delaware standard, which requires proof that respondents acted with "reckless indifference" and "deliberate disregard." *See Allaun,* 147 A. at 261.